## HALSELL v. FIRST NAT. BANK OF MUSKOGEE *et al.*

No. 4588.   Opinion Filed June 29, 1915.

(150 Pac. 489.)

1. **SALES—Misrepresentation—Reliance by Buyer.** A vendee has a right to act on the positive representations of existing, material facts, made by a vendor, even though the means of ascertaining their falseness is open to him. The real question in such case is, Was the vendee in fact deceived by the false representations, for it is as much an actionable fraud to deceive a credulous person, with an improbable story, as it is to deceive a cautious person with a plausible one.

2.. **CORPORATIONS—Sale of Corporate Stock—Misrepresentations —Knowledge of Director.** A director of a corporation is chargeable with knowledge of such affairs of the corporation as it is his duty to keep informed of in the conduct of the business, but such implied knowledge does not excuse a codirector in making false representations as to the title of the corporation to lands, and the value of its assets, when such representations are false, and are made for the purpose of inducing a purchase of the stock held by the director making them.

3. **FRAUD—Defense—Implied Knowledge—Corporations.** A director of a corporation cannot practice a fraud upon a codirector by false statements as to the affairs of the corporation, and when sued for the deceit, defend successfully on the ground that the defrauded director is presumed to have knowledge of the affairs of the corporation.

4. **ESTOPPEL—Pleading—Necessity.** In order for a party to avail himself of the doctrine of estoppel as constituting a part of his cause of action or defense, he must plead the facts constituting the estoppel.

5. **APPEAL AND ERROR—Ground for Reversal—Instructions.** Where a material issue is presented by the pleadings, and there is evidence tending to support it, a serious misdirection in the charge cannot be held harmless error.

(Syllabus by Devereux, C.)

*Error from District Court, Muskogee County;*
*R. P. deGraffenreid, Judge.*

Action by the First National Bank of Muskogee against E. L. Halsell and others. Judgment for plaintiff, and the defendant named brings error. Reversed and remanded for new trial.

This was an action brought in the court below by the First National Bank of Muskogee against E. L. Halsell, C. M. Bradley, and Fannie B. Bradley, wherein plaintiff claimed that on December 24, 1907, for a valuable consideration, Halsell executed and delivered to the defendant C. M. Bradley his certain promissory note in the sum of $5,000, to become due and payable three years after date, with interest at the rate of 8 per cent. per annum from date until paid, and 10 per cent. of the entire amount as attorney's fee in case of suit filed to collect the same. The note is attached to the petition and made an exhibit thereto. It was alleged that for a valuable consideration, before maturity, the defendants C. M. Bradley and Fannie B. Bradley sold and delivered this note to the bank, and guaranteed the payment thereof, and the bank was, at the institution of the suit, the holder and owner of the note, for value, and that the defendants had failed and refused to pay the same or any part thereof, and that there remained due and unpaid the sum of $5,000, with interest.

To this petition the defendants Bradley filed a separate answer, admitting the execution of the note, but denying that the plaintiff was the owner of the note, and also denying that the note was purchased by the bank, or that the note was purchased by the plaintiff for value before maturity. And, further answering, they say that the note had been in the possession of the bank for a long period of time, and that after the bank had acquired the

note it procured the indorsement thereon of the Bradleys, waiving protest and guaranteeing the payment, and that the Bradleys signed the waiver of protest and guaranty of payment long after the transfer and delivery of said note, and without consideration, and that the waiver of protest and guaranty were without consideration and void. The Bradleys further deny that they are indebted to the bank on account of this note.

The defendant E. L. Halsell filed a separate answer, admitting the execution of the note sued on, and that it was executed for part of the stock in the International Land Company, which he purchased from the defendant Bradley, but alleging that he had made this purchase on the false and fraudulent representations of C. M. Bradley, A. M. Young, I. B. Kirkland, and W. E. Rowsey, all of whom were stockholders and directors in said International Land Company, and that such representations were made prior to the execution of the note; that the International Land Company was, up to February, 1907, owned by the Bank of Commerce of Muskogee, and that said parties were all stockholders in the Bank of Commerce at the time it was decided to separate the business of the two corporations, and to issue stock separately to the stockholders in the two corporations; that prior to the date of this transaction Bradley, Young, Kirkland, and Rowsey entered into a conspiracy to unload the stock of the International Land Company on the defendant Halsell, and in furtherance of this unlawful conspiracy they represented to him that the stock in the land company was worth about four times its face value, and that the assets of the company were of great value, which assets consisted of land, lease holdings, and timber contracts, and that the company had the fee-simple title to over

26,000 acres of land, on which the purchase price was all paid, and that the character and quality of the land was of high grade, and they further represented, especially Bradley did so, that they were familiar with the lands, their character and quality, and told the defendant that there was no use going upon the land for the purpose of inspecting it, and that there was no necessity of going to the expense of making abstracts of title, and represented that the title to the same was complete in the company, and that they were familiar with all the facts relating to the value of the stock and the assets of the company, but that, in fact, at the time of this transaction, and for a long time prior thereto, the International Land Company was insolvent, and its stock was worthless, and that, in fact, it had title to less than one-fifth of the number of acres which the parties above named represented to Halsell that it owned, and the character of the land to which they did have title was of the lowest character, and that all of these representations were false, and known to be false by the parties making them at the time, and that they were made for the fraudulent purpose of deceiving Halsell, and causing him to purchase the worthless stock of the company; that these parties had been connected with both the bank and the land company from their organization, and had every advantage in knowing the facts relating to all propositions involved, and did, in fact, know all of these facts, and that although Halsell was a stockholder and director in the land company, he had no knowledge of the value of its stock, or of the assets of the company, except what he learned from Bradley, Young, Kirkland, and Rowsey, and in purchasing this stock he relied solely upon the representations of these parties, and believed them to be true, and

that he would not have executed the promissory note sued on, which was for the purchase of the stock in the land company, had he known that the representations were false; but that he believed them to be true; that this land was scattered over a large area of country, and it would have been a task of great magnitude to visit and inspect it, and relying implicitly upon the statements made by the parties above named, and especially Bradley, that they had personally examined the tracts of land owned by the company, and knew the quality and character of the soil and the value thereof, he purchased the · stock and executed the note; that upon ascertaining the nature and extent of the misrepresentations made by Bradley and others above named, he offered to rescind the contract by returning the stock to Bradley, which offer was refused by the bank, and in the answer he tenders the shares of stock in the company for which the note was executed. He further alleges that prior to the purchase of this note by the bank it had knowledge of this fraud perpetrated upon the defendant.

In an amendment to the answer, Halsell pleads practically the same facts, except he alleges that he relied on the representations made by C. M. Bradley. To this answer the bank filed a reply, which was a general denial.

On the trial the defendant Halsell introduced a large amount of testimony, tending to prove the allegations of his answer. A large amount of evidence was introduced by the plaintiff tending to contradict it, thus making the direct issue to be passed on by the jury whether Halsell was induced to execute this note by the fraudulent representations of Bradley, or of Bradley and the other parties,

whose names are above given. On this issue the charge of the court to the jury is as follows:

"No. 9. The court instructs the jury that before the defendant E. L. Halsell shall be entitled to recover in the case they must not only find that the defendant, C. M. Bradley made false representations to the said E. L. Halsell as to the assets of the International Land Company and as to the value of the stock of the International Land Company purchased by him from the said C. M. Bradley, and for payment of which the said Halsell executed to the said Bradley his note now being sued on, but also that the defendant Bradley had no reasonable grounds to believe the false representations to be substantially correct when made, and that the same were made with intent to cheat and defraud the said Halsell, and that the said Halsell had not at hand the means of verifying the truth of such representations, and that, in purchasing the said stock the said Halsell relied on such false representations and would not have made such purchase except upon the faith of the same, and that in consequence thereof he was misled and injured."

The giving of this instruction is among the assignments of error. There was a verdict for the plaintiff bank, upon which judgment was duly rendered, and after motion for new trial was overruled and excepted to, the cause is brought to this court by petition in error and case-made.

*Geo. D. Rogers* and *Chas. L. Cunningham,* for plaintiff in error.

*Zevely, Givens & Stoutz,* for defendants in error.

Opinion by DEVEREUX, C. (after stating the facts as above). The defendant in error contends that the note in suit was negotiable, although it contained a provision for the payment of attorney's fee, which rendered it nonnegotiable at the time that it was executed and de-

livered. This question was decided by this court on June 15, 1915, in cause No. 4580, *Adams v. Thurmond, ante,* 149 Pac. 1141, holding that under these circumstances the note was not negotiable. The same question was decided in *American National Bank v. Halsell,* 43 Okla. 126, 140 Pac. 399. We therefore hold that this note was not negotiable.

The point presented, therefore, is whether there was error in the instruction of the court above set out. The court charges the jury that they must not only find that the defendant Bradley made such false representations to Halsell as to the assets of the International Land Company, and as to the value of its stock purchased from Bradley, and for the payment of which this note was executed, but also that Bradley had no reasonable grounds to believe the false representations to be substantial and correct when made, and that they were made with the intent to cheat and defraud Halsell, and that Halsell had not at hand the means of verifying the truth of such representation. The vice in the instruction is in charging that Halsell could not set up this defense if he had at hand the means of verifying the truth of the representation. The effect of this instruction, and the only sense in which the jury could have taken it, was that although Bradley did make the false and fraudulent representations to Halsell in regard to the assets of the land company, and the value of its stock, yet this defense was not open to him if Halsell had at hand the means of verifying the truth of such representations. In our opinion this charge is directly in conflict with the opinion of this court in *Prescott v. Brown,* 30 Okla. 428, 120 Pac. 991. In that case it is decided:

Halsell v. First Nat. Bank of Muskogee et al.

"A vendee has a right to act on the positive representations of existent material facts made by a vendor, even though the means of knowledge were open to him. The real question in such matters is, Was the party in fact deceived by the false representations? 'It is as much an actionable fraud willfully to deceive a credulous person with an improbable story as it is to deceive a cautious and sagacious person with a plausible one.'"

In Bigelow on Frauds, 524, cited in the Prescott Case, it is said:

"If the representations were of the character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent (in reality negligence is beside the case where the misrepresentation was calculated to mislead, and did mislead), for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' This indeed appears to be true even of cases in which the injured party had in fact made a partial examination."

Citing from the same authority on page 523, the opinion in the Prescott Case says:

"Recent authority has, however, gone far towards settling the matter right in principle. The proposition has now become widely accepted, at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge was specially open to him, although he had legal notice of the real state of things. It may be improbable that a man with the truth in reach should accept a representation made in regard to it, but the improbability can be no more than a matter of fact."

In *Fargo Gas & Coke Co. v. Fargo Gas & Electric Co.*, 4 N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, also cited in the Prescott Case, it is said:

"The unmistakable drift is towards the just doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim. * * * The general rule is, and, upon principle, must be, that the question is one of reliance by the buyer upon the false statement of the seller. Whether it was wise for him to rely upon it, whether he was prudent in so doing, whether he is not chargeable with negligence in a certain sense in not investigating, these inquiries are, in general, immaterial, provided the purchaser has in fact been deceived. The circumstances under which fraud has been accomplished are so varied, the nature of the property and the character of the misrepresentations are so widely different, in different cases, that it is unwise to attempt to enunciate with precision a general rule by which all cases shall be governed."

In *Cottrill v. Krum,* 100 Mo. 397, 13 S. W. 753, 18 Am. St. Rep. 549, in passing upon the same proposition the Supreme Court of Missouri says:

"The proposition has now become very widely accepted at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact notwithstanding the fact that the means of knowledge were specially open to him. * * * 'The doctrine of notice has no application where a distinct representation has been made. A man to whom a particular and distinct representation has been made is entitled to rely on the representation, and need not make any further inquiry, although there are circumstances in the case from which an inference inconsistent with the representation might be drawn.' Kerr on Frauds, at page 80. 'No man can complain that another has relied too implicitly on the truth of what he himself stated.' Kerr on Frauds, p, 81. The same principle has been expressed by this court in the following terms: 'It is no excuse for, nor does it lie in the mouth of, the defendant to aver that plaintiff might have discovered the wrong, and prevented its accomplishment, had he exercised watchful-

ness, bécause this is but equivalent to saying "You trusted me, therefore I had the right to betray you." ' *Pomeroy v. Benton*, 57 Mo. 531. The same idea is expressed in another opinion, thus: 'We doubt if it is equity to allow a sharper to insist on the fulfillment of his bargain, on the ground that his victim was so destitute of sagacity as to make no further inquiries.' *Wannell v. Kem*, 57 Mo. 478."

But it is argued that as Halsell was an official and director of the land company, he is held to have notice of the condition of the assets of the corporation and of the approximate value of the stock. In *Stephens v. Orman*, 10 Fla. 9, it is held:

"If a partner who exclusively superintends the business and accounts of the concern should, by concealment of the true state of the accounts and business, sell his share of the assets of the firm to a copartner for a disproportionate price, by means of such concealment, the purchase will be held void."

In 1 Story's Eq. Juris. section 220, it is said:

"If a partner who exclusively superintends the business and accounts of the concern should, by concealment of the true state of the accounts and business, purchase the share of the other partner for an inadequate price by means of such concealment, the purchase will be held void."

In the case at bar actual fraud is charged, and the plaintiff in error introduced evidence that he was ignorant of the condition of the corporation, and that he relied upon the statements made to him by Bradley, and after introducing in evidence the balance sheets of the land company, showing the assets much in excess of liabilities, Halsell testified:

"Q. Were there any written statements made by the company, the company or the officers of the company,

prior to the time you made the purchase of this stock? A. Yes, sir. Q. You know when and by whom they were made? A. In the fall of 1906 there was a statement made. There were statements made all along. Q. When did you first see these statements I have just handed you for the purpose of identification? A. Well, I saw them all along from 1906 to 1907. Q. To what time in 1907? A. Until the, until the, in the winter of 1907. Q. December, 1907, when you purchased the stock? A. In 1907, when I purchased this stock. Q. Issued the statement before you purchased the stock? A. Yes, sir. Q. Before you executed the note in controversy? A. Yes, sir. Q. Who presented it to you, if you know? A. Mr. Bradley, Mr. Young, and Mr. Rowsey. Q. Were they presented to you before or after they began the negotiations for the sale of this stock? A. Before. * * * Q. Mr. Halsell, at the time you purchased this stock and executed the note in controversy in this case, what information did you have as to the financial condition of the International Land Company of your own knowledge? A. No, sir; I did not have any knowledge than a man that was not in there. Did not have anything to do with it; did not buy a piece of land and never made a loan. Q. On what information did you act in making that purchase, if you had any? A. I only had the information I got from the officer in charge of the company. * * * Q. Go ahead. I want to know what they said to you about the conditions; take Bradley, for instance, and state what he said to you about the International Land Company before you made your purchase. A. Bradley told me he had $1,000,000 assets. Q. When did he tell it to you? A. If he told me 1 time he told me 500 times. Q. How long ago was that? A. From 1905 until I bought that stock. He made statements running from $800,000 on up to $1,000,000. He represented to me that he knew every foot of land in this country and had been looking for this thing for five years, and was prepared for it to come, and had $1,000,000 in this thing."

It is true that this evidence was contradicted, but the issue was for a jury, and the plaintiff in error was entitled to have this issue submitted to the jury under proper instructions on the evidence in the case.

The charge that:

"If Halsell at any time had means of verifying the truth of such representations, and that in purchasing the stock the said Halsell relied on said false representations, and would not have made such purchase except upon the faith of same, and in consequence thereof he was misled and injured"

—could only be understood by the jury to mean that if Halsell had at any time the means of verifying the statement made by Bradley, then he was not misled or injured. The case of *Hardin v. Dale*, 45 Okla. 694, 146 Pac. 717, is not in conflict with what we have said. In that case Hardin purchased certain furniture from a manufacturing corporation in which Dale was a director, and gave his note for the purchase price. Before the note became due, Hardin notified the corporation that the furniture was worthless, that there was an entire failure of consideration, and that he would not pay the note; but, as far as the facts of that case disclose, without actual notice to Dale, the directors of the corporation sold the note to him, for value, he being a director. This court held that Dale was charged with notice of the action of the payor in repudiating the obligation. If, in that case, one of the directors, who had notice of the action of the payor, had represented to Dale that the note was good and that the payor would pay it, after he had notice that the payor had repudiated it, and Dale had purchased the note, relying on said representation, and on discovering the actual fraud perpetrated on him, had sued the director making

the fraudulent representation, the case would be similar to the one at bar, but in that case, there being no charge of actual fraud, the decision is not an authority in this case. To hold that one director of a corporation can practice any fraud he pleases on another in regard to corporate matters, and then to be heard to say that he is immune from suit by the defrauded party because the defrauded party is presumed to have known as much as he did, is carrying the rule further than we have found in any text-book or decided case.

It is also claimed, in the brief of the defendant in error, that by paying interest on this note after the discovery of the fraud, and by the fact that the bank held the Bradley stock purchased by Halsell, as a collateral for a loan of $3,800 to Bradley, which stock they surrendered and took the Halsell note in its place, Halsell is now estopped from setting up the fraud, and *Doxy v. National Exchange Bank of Perry*, 19 Okla. 183, 92 Pac. 150, is cited as sustaining this position. In the Doxey case certain notes were executed to one McCandless, and by him assigned to the Exchange Bank, which notes were secured by a chattel mortgage. The mortgagors removed the mortgaged property from the county, in violation of law, and after this was done the plaintiff in error in that case signed the notes under the agreement that the bank would waive the mortgage security. The court held that the waiver of the mortgage security was a sufficient consideration to bind the plaintiff in error, and that she was estopped to deny that she signed the notes without the knowledge of the original makers. We fail to see how this case affects the case at bar in any way. But a sufficient answer to this contention is that the bank does not plead these facts as an estoppel. It is well settled in this

state that an estoppel, to be applicable, must be pleaded. In *Nance v. Oklahoma Fire Insurance Co.*, 31 Okla. 208, 120 Pac. 948, 38 L. R. A. (N. S.) 426, it is held:

"In order for a party to avail himself of the doctrine of estoppel as constituting a part of his cause of action or defense, he should plead the facts constituting the estoppel" (citing *Holt v. Holt*, 23 Okla. 639, 102 Pac. 187; *Cooper v. Flesner*, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. [N. S.] 1180, 20 Ann. Cas. 29; *Blakemore v. Johnson*, 24 Okla. 544, 103 Pac. 554).

Had the bank pleaded the facts contended for in its brief as an estoppel, the question would have been presented to the lower court, and would have been properly before us, but in the absence of such plea the bank cannot now avail itself of this estoppel.

The last point raised in the brief is that, even admitting there was technical error, it was harmless, because it appears from the entire record that the bank will eventually be entitled to judgment. We cannot carry the doctrine of harmless error to this extent. The issue of fraud in this case was fairly presented by the pleadings and evidence. The plaintiff in error had the right to have the issue submitted to the jury under legal instructions as to the law. This the court failed to do. If we should now say that in the face of this error we will affirm the judgment, we would be assuming the functions of the jury, for had the jury been properly charged on the question of fraud, no one can say what their verdict would have been. The defendant, under the Constitution, is entitled to a trial by jury, and this means a trial conducted according to the requirements of law on legal evidence and instructions, directing the jury properly as to what the law is in the case. We do not wish to be understood

as saying that for every error occurring at the trial a new trial must be granted, because frequently it is apparent that the errors are harmless, but we cannot say that an improper instruction to the jury is harmless error, when it bears on the vital issue in the case, and we only decide in this case that, where a material issue is presented by the pleadings, and there is evidence in the record tending to support it, a serious misdirection in the charge cannot be held harmless error.

We therefore recommend that the judgment below be reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.