Hayden RUCKER, Jr., Plaintiff in Error,

v.

Herbert R. TIETZ, Defendant in Error.

No. 39865.

Supreme Court of Oklahoma.

Nov. 20, 1962.

Boatman, Pugsley & Boatman, by Edgar R. Boatman, Okmulgee, for plaintiff in error.

Richard A. Hays, Henry M. Beidleman, Okmulgee, Champ Graham, Emporia, Kan., for defendant in error.

JOHNSON, Justice.

The defendant in error, hereafter referred to as plaintiff, filed his petition against defendant alleging that he purchased on July 29, 1959, thirty-five head of "springer heifers" from the defendant by written contract; that defendant expressly represented and warranted orally that said heifers had been bred to an Angus bull and would calve from October 10th to about December 15, 1959; that such representations were false and that only three of such heifers calved and none showed indications of being bred to an angus bull.

Upon trial to the jury, plaintiff recovered a judgment for $1,020.00. From an order overruling defendant's motion for new trial the defendant appeals and urges two propositions for reversal; first, that the court erred in attempting to orally instruct the jury and in doing so misled the jury by improperly stating the law of the case, and, secondly, error in overruling demurrers to the petition and evidence and motion for directed verdict.

Turning now to the first contention, the record shows that after the jury was instructed the jury foreman and the trial judge engaged in the following conversation in open court:

"JURY FOREMAN:

"Judge, we would like to have a clarification as to whether a reckless—now right here it says, 'If you find from a preponderance of the evidence that the defendant induced the plaintiff to enter into a contract which is the subject of this suit by making a positive material * * * either made recklessly without knowledge of its truth or as a positive proof—assertion.' We want to know if a man is considered guilty recklessly without knowledge and fraud or considered one and the same or separate?

"BY THE COURT:

"Well, now, there isn't much I can tell you about that except that—about all I can tell you about it is right here. That this is not the only one in here on that particular phase of it. There is another one here that will give you some *incite* on it if you will read it. For instance, No. 5, and No. 6, and No. 7, all deal with that phase of the lawsuit and the questions that you have asked me are in there. Now, as a matter of law I can't point them out to you.

"JUROR:

"Are we supposed to be enough lawyer ourselves to find them in there?

"BY THE COURT:

"It's not a question of being a lawyer. It is just plain English.

"JURY FOREMAN:

"They are in 5, 6 and 7, you say?

"BY THE COURT:

"Yes sir, all of it is in there, every bit of it. The thing you are talking about. All I can do—I can't reduce these things to anything other than what Court tells me I can and that's what they are in here, plain English, as near as I can tell. If there is some meaning of some word or something like that, I could possibly, with permission of counsel, go get the dictionary and give you that or write you another instruction but when you ask me about the thing you have why then that is the question about the thing you have to determine from these instructions. That is the thing you have got to determine.

"JUROR:

"If we find—for example, if we find for Mr. Tietz, do we make reservations to that or is Mr. Rucker automatically guilty of the fraud theory?

"BY THE COURT:

"Well, he's—I can't tell you that.

"JUROR:

"Is that up to the Jury, Judge?

"BY THE COURT:

"It's up to the Jury to find out whether he made any misrepresentations which would cause Mr. Tietz to do this and if he did then it is your duty to find for him for such amount you think he is entitled to, not to exceed $1680, just like the instruction says. Now, you fellows—I appreciate your—they are kind of confusing but when you look at them carefully they are just as plain as the nose on your face.

"JUROR:

"Five, Six and Seven?

"BY THE COURT:

"Yes, sir. They are all in there.

"BY MR. BOATMAN:

"Comes now the defendant and objects to remarks of Court as going outside instructions as given by this Court as being highly prejudicial to rights of this defendant and move for a mistrial.

"BY THE COURT:

"Overruled."

No authority is cited by the defendant to confirm his assertion of error.

The statute involved is subdivision 5 of Section 577, Title 12 O.S.1961, which reads as follows:

"Fifth. When the evidence is concluded and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered, and signed by the party or his attorney asking the same, and delivered to the court. The court shall give general instructions to the jury, which shall be in writing, and be numbered, and signed by the judge, if required by either party."

In the case of Boggs v. United States, 10 Okl. 424, 63 P. 969, written instructions were given to the jury. For a period of time the jury was unable to agree and came into court to ask clarification of the instructions by the court. A rather lengthy discussion, detailed in the opinion, took place between the court and the jury. The jury retired, and after a time returned a verdict. Upon appeal the same contention was urged as in the case at bar. In the body of the opinion the court said:

"The second assignment of error is that the court, while the jury were deliberating upon their verdict, after being instructed in writing as to the law of the case, and before a verdict was reached, called the jury into open court and gave them oral instructions without the consent of the defendant. Now, if this contention of plaintiff in error is sustained by the record, then there would be no doubt but, under the law of this territory, this would be reversible error. Hence, as to this assignment of error, this case turns entirely upon the question, were the remarks of the court to the jury an instruction, within the meaning of the statute, which requires all instructions to be in writing? * * *"

The first paragraph of the syllabus by the court reads:

"Under the laws of this territory, the giving of oral instructions by the court to the jury, if objected to by the defendant, and when exceptions are saved thereto, is reversible error. But every communication between the court and the jury on the trial of the cause is not necessarily an instruction. Only when the statements of the court amount to a positive direction as to the law of the case will such statements be regarded as an instruction, within the meaning of the statute requiring the instructions of the court to the jury to be in writing."

**344**

■ We are of the opinion that the syllabus of such case as deals with the nature of the communication between judge and jury is the present law of this state. There was nothing in the record herein of what the court said that amounted to a "positive direction as to the law of the case" and, therefore, the court's statements to the jury did not constitute an instruction and was not required to be in writing.

Defendant's second proposition challenges the sufficiency of plaintiff's petition and evidence to withstand demurrer and motion for directed verdict.

The written contract under which this sale was made contained the following description of the cattle sold:

"35 Springer Hfs. Hfs. to be tested by seller before del. Del. to be about Sept. 1, 1959."

We have found no definition of the word "springer" in the legal dictionaries and works which we have consulted. However, Webster's Third New International Dictionary defines the word as "a cow that is nearly ready to calve." The second edition of the same work says "a cow in calf." We think that the latter is the usually accepted meaning among stockmen. The plaintiff testified that it meant a heifer "in her later few months of pregnancy."

The record discloses from the defendant's own testimony that plaintiff told him:

"Q. —he was looking for heifers that would calve in the fall?

"A. Yes."

The testimony of the veterinarian established that pregnancy of a cow may be determined by rectal examination as early as two months after exposure. This contract was made July 29, and the cows were supposed to calve in October, November or December. This would indicate that the last period of exposure was in March. On July 29, the pregnancy should be advanced at least four months and could have been readily ascertained by the seller, according to the testimony of the veterinarian.

So certain, or reckless, was the seller that the heifers were pregnant that a written contract (supra) describing the cattle as "springer heifers" was signed by him. We are convinced that the record discloses sufficient evidence to warrant the submission of the case to a jury.

In the definition of fraud contained in 15 O.S.1961, Sec. 58, actual fraud is defined in subdivision 2 as follows:

"2. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true."

■ The interpretation of this statute has been made by this court in a very large number of cases. We quote but one from the first paragraph of the syllabus by the court in Johnson v. Eagle, Okl., 355 P.2d 868:

"The elements of actionable fraud are material, false representations made with knowledge of their falsity, or recklessly made without knowledge of their truth and as a positive assertion, with intention they be acted upon by another, and relied thereon by another party to his injury."

■ Neither is it any defense to this action that the buyer could have had the tests made to ascertain the pregnancy of the cattle. In Halsell v. First National Bank of Muskogee, 48 Okl. 535, 150 P. 489, L.R.A.1916B, 697, the first paragraph of the syllabus reads:

"A vendee has a right to act on the positive representations of existing, material facts, made by a vendor, even though the means of ascertaining their falseness is open to him. The real question in such case is, Was the vendee in fact deceived by the false representations, for it is as much an actionable fraud to deceive a credulous person, with an improbable story, as it is to deceive a cautious person with a plausible one."

The evidence establishes beyond doubt that a very large percentage of these cattle were not with calf. No complaint is made of the size of the verdict or the competency of the evidence introduced.

The judgment of the trial court is therefore affirmed.