0147

Chauncey W. STARKEY, Respondent, v. Roscoe BELL and Lou Mae Bell, d/b/a Bell's Calabash Seafood Kitchen, Appellants.

(315 S. E. (2d) 153)

Court of Appeals

*W. T. Johnson, Jr.,* Conway, *for appellants.*

*Richard E. Lester,* of *Van Osdell, Lester and Stewart,* Myrtle Beach, *for respondent.*

Heard Feb. 27, 1984.

Decided April 13, 1984.

CURETON, Judge:

Roscoe and Lou Mae Bell appeal a jury verdict of $115,000 actual damages rendered against them in this action for fraud and deceit in connection with the sale of their restaurant to

respondents, Chauncey and Norma Starkey.[1] We affirm the judgment entered on the jury's verdict.

The Starkeys, residents of Maryland, purchased the Bells' restaurant in Calabash, North Carolina, on May 11, 1977. They were initially attracted to it by a newspaper ad which listed a purchase price of $249,000. The ad also stated that the restaurant had an annual gross of $250,000 with a net income of $60,000.

On December 31, 1976, the parties began negotiations for the sale of the restaurant. Responding to Mr. Starkey's request for verification of the represented income of the restaurant, the Bells gave him their 1974 and 1975 Income and Expense sheets which showed gross income of $230,000 and $243,000, respectively, and net income of $45,000 and $48,000, respectively. Mr. Bell told Mr. Starkey he expected to net $60,000 for 1976. Seeking further verification, Mr. Starkey asked to see the restaurant's books. Mr. Bell told him the books were in his accountant's possession and the accountant was unavailable at that time.

In a second meeting in January, 1977, the Bells gave the Starkeys 1974 and 1975 tax returns for the restaurant which they claimed to have filed with the United States Internal Revenue Service. The 1974 and 1975 returns showed gross income of $230,000 and $243,000, respectively, and net income of $39,954 and $42,512, respectively. The Starkeys then agreed to purchase the Bells' restaurant for $220,000 and began operation of the restaurant in May, 1977.

This action was instituted in November, 1978, after the Starkeys had sustained $57,097 in losses. During the course of the action, the Starkeys subpoenaed the Bells' income tax returns for 1974, 1975 and 1976. In contradiction of the Bells' representations and the returns previously furnished the Starkeys, these returns disclosed that the Bells had gross income of $122,721, $124,854 and $107,742 for the years 1974, 1975 and 1976, respectively, and net income of minus $1,411, plus $6,999 and minus $10,099, respectively. On October 31, 1980, the restaurant was sold at a foreclosure sale for $138,000.

---

[1] It was stipulated at trial that Norma Starkey was also a party plaintiff in the action though she was not named as such in the suit.

Following a jury trial in January, 1981, the Starkeys were awarded $115,000 actual damages. At the appropriate stages of the proceeding, the Bells moved for nonsuit, directed verdict, judgment n.o.v. and a new trial or new trial *nisi.*

On appeal, the Bells allege that the trial court erred in five particulars: (1) in denying their motions for nonsuit, directed verdict, judgment n.o.v. and a new trial; (2) in admitting testimony about various debts of the Starkeys; (3) in admitting testimony about the amount of business done by other restaurants in the area; (4) in admitting hearsay testimony; and (5) in admitting the testimony of a character witness for Mr. Starkey. We address the assignments of error involved in this appeal in the order mentioned above.

In their first assignment of error, the Bells contend that there was insufficient evidence of fraud to warrant submitting the case to the jury or to support the jury's verdict. We find that there was evidence from which the jury could find that the elements of common law fraud existed in the Bells' representations. These elements under settled law in South Carolina are: (1) misrepresentations of a material fact; (2) made with knowledge of its falsity or ignorance of its truth; (3) intended by the maker to induce action in reliance; (4) lack of knowledge by the other that the fact represented is false; (5) reasonable reliance by the other upon the fact; and (6) harm proximately caused by the reliance. *M. B. Kahn Construction Co. v. South Carolina National Bank*, 275 S. C. 381, 271 S. E. (2d) 414 (1980); *Jones v. Cooper*, 234 S. C. 477, 109 S. E. (2d) 5 (1959).

The Bells particularly question the sufficiency of the evidence with respect to two of the elements of fraud: whether the Starkeys relied upon the representations and whether their reliance was reasonable. The Bells emphasize that Mr. Starkey was a college-educated accountant who had worked in the field of accounting for thirteen years. They submit that Mr. Starkey knew, from their failure to produce the books, that they could not substantiate the figures they had given him.

The Starkeys point out that Mr. Starkey's experience in accounting was not in the area of tax. They note that the Bells' unsubstantiated figures and failure to produce the books did in fact arouse their suspicions. They contend that their suspi-

cions were allayed, however, by the Bells' presentation of the tax returns which they claimed had been filed with the IRS.

We find that the record supports the jury's finding that the Starkeys relied on the Bells' representations and that their reliance was reasonable. Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the triers of the facts. *Miller v. Premier Corp.*, 608 F. (2d) 973 (4th Cir. 1979) (applying South Carolina law). We conclude that these issues were properly submitted to the jury and its verdict is supported by the evidence.

Next, the Bells assert the court erred in admitting evidence of debts incurred by the Starkeys subsequent to the representation. Starkey testified to the following debts: (1) $20,495 balance on a second mortgage given to the Bells as part of the purchase price; (2) $28,955 working capital invested during the period of operation of the business; (3) $21,452 balance on a third mortgage to secure money to invest in the restaurant; (4) $31,500 borrowed from family and a friend to invest in the operation of the restaurant; (5) $15,628 in accounts payable; (6) $16,891 in interest on loans; and (7) $13,493 in business taxes payable. The Bells argue that testimony concerning these debts was irrelevant since the debts are not proper elements of damage in a fraud and deceit action. They maintain that pursuant to *Warr v. Carolina Power and Light Co.*, 237 S. C. 121, 115 S. E. (2d) 799 (1960), the Starkeys are entitled at most to $37,000: the difference between the purchase price, which they equate with the represented value, and the lowest appraised value of the restaurant at the time of purchase. We disagree.

Generally, the measure of damages in an action for fraud and deceit in South Carolina, which follows the majority "benefit of the bargain" rule, is the difference between the value the plaintiff would have received if the facts had been as represented and the value he actually received, together with any special or consequential loss which is the natural or proximate result of the fraud. *Lawson v. Citizens and Southern National Bank of South Carolina*, 255 S. C. 517, 180 S. E. (2d) 206 (1971); *Baeza v. Robert E. Lee Chrysler, Plymouth, Dodge, Inc.*, S. C. 309 S. E. (2d) 763 (App.

1983); *accord,* RESTATEMENT (SECOND) TORTS 549; 37 Am. Jur. *Fraud and Deceit* Section 353 (1968).

The responsibility even for fraud has its limitations, however. The defrauded purchaser who elects to sue for damages rather than rescission of the contract is not entitled to recoup any part of the purchase price. McCormick, *Damages* 456 (1935). In addition, since under the "benefit of the bargain" rule the purchaser recovers the difference between the value of what he got and the value it would have had if as represented, he cannot recover expenditures necessary to make the property conform to the representations or for outlays incurred in carrying out the bargain. *Id.* at 456. The purchaser may, however, recover miscellaneous consequential losses which are the direct and natural consequence of his acting on the faith of the representations. *Id.* at 459-460.

Moreover, in *Gilbert v. Mid-South Machinery Company,* 267 S. C. 211, 227 S. E. (2d) 189 (1976), our Supreme Court held that where the purchaser of a laundry business was induced to buy the business on the seller's representation of its profitability, the jury's consideration of the amount of losses sustained during the purchaser's operation of the business was proper in determining the amount of damages.

Applying the above-mentioned principles, the Starkeys, in this action for fraud and deceit, were entitled to recover benefit of the bargain damages plus consequential losses which could properly include the total amount of losses sustained during their operation of the business.

In calculating benefit of the bargain damages, there was testimony from an expert witness for the Starkeys from which the jury could have found that the value of the restaurant the Starkeys actually received was $182,000. There was also testimony from expert witnesses from which the jury could have found that had the restaurant grossed $250,000, as represented by the Bells, its value would have been $250,000.[2] Thus, the jury could have found the Starkeys

---

[2] The Starkeys' appraiser testified that similar restaurants in the area sold for the approximate amount of yearly gross times a factor of one. The Bells themselves indicated in their ad that the restaurant "could almost be listed in 'Ripley's Believe It or Not' ... Excellent opportunity at only $249,000...." Moreover, gross income or volume of sales is important in connection with the sale of certain types of businesses, including restaurants, as furnishing a rough guide to its value. Annot., 27 A.L.R. (2d) 14, 20 (1953).

entitled to benefit of the bargain damages of at least $68,000.

Additionally, the Starkeys were entitled to consequential damages which could properly include their losses sustained as a direct and natural consequence of their acting on the faith of the Bells' representations that the restaurant was profitable. There was testimony from Mr. Starkey from which the jury could have found that in 1977, 1978, 1979 and 1980, the Starkeys suffered losses of $39,948; $17,149; $30,185; and $32,361, respectively. Further the jury could have reasonably found from the evidence that these losses totaling $119,643 were a direct consequence of the Bells' representations about the gross and net income of the restaurant.[3]

The Bells correctly argue that the Starkeys may not recover any part of the purchase price or outlays incurred in operating the restaurant. Testimony about these debts was therefore error. We find, however, that the Bells were not prejudiced by the admission of this testimony since the jury's verdict was well within the amount of damages supported by the record. *Lemoine v. Hollingsworth*, 273 S. C. 477, 257 S. E. (2d) 713 (1979).

The Bells finally contend they are entitled to a new trial because of alleged errors in the admission of hearsay evidence over their objection, testimony about the amount of business done by other restaurants in the area, and testimony of a character witness for Starkey who did not presently live in the community in which Starkey lived. We have examined the exceptions and reviewed the evidence relative to these alleged errors and conclude a new trial is not warranted. Though testimony may constitute inadmissible hearsay evidence, no prejudice is shown when it merely corroborates other evidence admitted in the case. *Crowder v. Carroll*, 251 S. C. 192, 161 S. E. (2d) 235 (1968). The admission of evidence is discretionary with the trial judge whose ruling will not be disturbed in the absence of an abuse thereof amounting to an error of law, and prejudice. *Holmes v. Black River Electric Coop., Inc.*, 274 S. C. 252, 262 S. E. (2d) 875

---

[3] Under the Starkeys' operation, the restaurant grossed from a low of $85,972 in 1977 to a high of $187,232 in 1979.

(1980). The Bells have shown this Court no prejudice resulting from the admission of any of the evidence.

Having considered the assignments of error raised by the Bells and finding no merit in them, the judgment of the trial court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.