1845

Mervyn EPSTEIN and Michael Guy Epstein, Respondents v.
Orris HOWELL and Russ Howell, Appellants.

(419 S.E. (2d) 379)

Court of Appeals

*V. Laniel Chapman* and *Bruce A. Byrholdt, Chapman,
King & Byrholdt,* Anderson, *for appellants.*

*Stephen K. Haigler,* Anderson, *for respondents.*

Heard April 8, 1992; Decided June 22, 1992.

Reh. Den. July 15, 1992.

GOOLSBY, Judge:

This is an action for fraud brought by Mervyn and Guy Epstein against Orris and Russ Howell. The jury found in favor of the Epsteins, awarding them actual and punitive damages. The Howells appeal.[1] The issues on appeal relate to the element of reliance and to the amount of damages. We affirm.

Mervyn and Guy Epstein and Orris and Russ Howell each owned 25 percent of Steinwell Enterprises, Inc., a corporation engaged in the business of manufacturing women's apparel. Orris Howell, who served as president of Steinwell, managed the daily operations of the corporation. Differences arose between the Epsteins and the Howells when Orris Howell attempted to negotiate a contract with Steinwell's largest customer on behalf of Howell Enterprises, Inc., a manufacturing company owned solely by the Howells.

To settle these differences, the Epsteins agreed to purchase the Howells' 50 percent interest in Steinwell for $50,000. The Epsteins based their decision to pay this amount, in part, on Orris Howell's statement, in response to an inquiry thereabouts, that the corporation's payroll and FICA taxes had been paid. In fact, theses taxes, which totalled $40,578.19, had not been paid and, therefore, were due and owing by the corporation.

## I.

Orris Howell contends the trial judge erred in denying his motion for a directed verdict because the Epsteins had no right to rely on any representations made by him regarding the payment of taxes. More specifically, he asserts the Epsteins unreasonably relied on his misrepresentation regarding unpaid taxes because Mervyn Epstein did not trust him and because of his "misrepresentation . . . could have been discovered by an examination of the bank statements and books prior to the Epsteins' purchase of the Howells' interest in Steinwell."

As this court stated in *Starkey v. Bell*, 281 S.C. 308, 313, 315

[1] At oral argument before this court, counsel for the Howells indicated Russ Howell had settled with the Epsteins and is, therefore, no longer a party. Consequently, we address only those issues Orris Howell appeals.

S.E. (2d) 153, 156 (Ct. App. 1984), "Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the triers of the facts." And as the Supreme Court stated in *Florentine Corporation, Inc. v. PEDA I, Inc.*, 287 S.C. 382, 386, 339 S.E. (2d) 112, 114 (1985), "The right to rely must be determined in light of the representee's duty to use reasonable prudence and diligence under the circumstances."

Here, the circumstances involved a person who had a fiduciary duty to disclose all relevant facts affecting the value of corporation, *i.e.*, a corporation's president and manager selling stock in the corporation to other shareholders. *See Manning v. Dial*, 271 S.C. 79, 245 S.E. (2d) 120 (1978) (as the managing officer of a corporation, the defendant-stockholder had a fiduciary duty to disclose all relevant facts to the plaintiff, the only other stockholder, when purchasing the plaintiff's stock); *Jacobson v. Yaschik*, 249 S.C. 577, 155 S.E. (2d) 601 (1967) (a defendant, who was president, general manager, majority stockholder, and director of a corporation, stood in a fiduciary relationship to the plaintiff, the only other stockholder, and in every instance was required to make a full disclosure of all relevant facts when purchasing the plaintiff's stock).[2]

Here, the circumstances also involved a positive, distinct, and definite misrepresentation made in response to a precise inquiry.

---

[2] The dissent would order the grant of a judgment notwithstanding the verdict, holding that "no fiduciary relationship existed between the Epsteins had Orris Howell." At no point at trial, however, did Orris Howell contend a fiduciary relationship did not exist between him and the Epsteins when he and his brother sold their stock to the Epsteins. Moreover no statement of the issues presented for review sets forth this point and his brief includes no argument in this regard. What the dissent would have us do, then, is to provide a ground for reversal of the verdict and judgment below, although "it is not the function of an appellate court to supply a ground for reversal." *Shayne of Miami, Inc. v. Greybow, Inc.*, 232 S.C. 161, 168, 101 S.E. (2d) 486, 490 (1957); *see Connolly v. People's Life Ins. Co. of South Carolina*, 299 S.C. 348, 352, 384 S.E. (2d) 738, 740 (1989) ("We have held that the Court of Appeals may not decide an issue neither presented to the circuit court nor raised by proper exception on appeal."); Rule 207(b)(1)(B), SCACR ("The brief of appellant shall contain . . . [a] statement of each of the issues presented for review [and] [o]rdinarily, no point will be considered which is not set forth in the statement of the issues on appeal."); *Cason v. Gibson*, 217 S.C. 500, 61 S.E. (2d) 58 (1950) (contentions not argued in the brief need not be considered).

Under the circumstances, the Epsteins were justified in relying upon the truth of Orris Howell's statement that the corporation's taxes had been paid, notwithstanding that Mervyn Epstein did not trust him and that the Epsteins might have ascertained the falsity of the representation had they investigated. *See Halsell v. First Nat'l. Bank,* 48 Okla. 535, 150 P. 489 (1915) (an often-cited case holding a director cannot practice fraud upon a codirector by making false statements concerning corporate affairs to induce the purchase of his stock by the codirector and then successfully defend on the ground that the codirector is charged with the knowledge of corporate affairs and a duty to keep informed of corporate business); 37 Am. Jur. (2d) *Fraud and Deceit* § 254, at 342 (1968) ("It is well settled that a representee has a right to rely upon representations where a . . . fiduciary relationship exists between the parties [and] in such a case, the buyer generally has the right to rely upon the seller's representations with reference to the property sold, even though the buyer has the opportunity to investigate the matter and ascertain the truth with respect thereto."); *see also Reid v. Harbison Development Corp.,* 285 S.C. 557, 330 S.E. (2d) 532 (Ct. App. 1985), *aff'd in part and remanded,* 289 S.C. 319, 345, S.E. (2d) 492 (1986) (adopting RESTATEMENT (SECOND) OF TORTS § 540, at 88 (1979) and holding a recipient of a fraudulent representation of fact is justified in relying on its truth, although the recipient might have ascertained the falsity of the representation had the recipient investigated); 37 Am. Jur. (2d) *supra* § 252, at 337 ("[T]he rule is widely followed . . . that one to whom a positive, distinct, and definite representation has been made is entitled to rely on such representation and need not make further inquiry concerning the particular facts involved . . .").[3]

---

[3] The dissent maintains "this case is controlled by *Florentine Corp., Inc. v. PEDA I, Inc.,* 287 S.C. 382, 339 S.E. (2d) 112 (1985)." It is not. Unlike *Florentine,* this case involves a fiduciary relationship. Also, unlike *Florentine,* this case involves a positive, distinct, and definite oral misrepresentation that was never extinguished by a clause in a written document that contained "an express acknowledgement that 'neither [the seller] [n]or any broker has made any representations to . . . [the purchaser] which are not contained in [the sales contract].'" *Florentine,* 287 S.C. at 384, 339 S.E. (2d) at 113.

## II.

Orris Howell also argues the trial judge erred in failing to limit the amount of actual damages to $20,289.10, one half of the amount awarded by the jury, because this amount represents the Howells' unpaid share of Steinwell's taxes. This argument manifestly lacks merit, if for no other reason than that the corporation and not the shareholders owed the taxes.

In any event, we find the testimony of Mervyn Epstein and the testimony of one of the Epsteins' attorneys, Michael Glenn, provide some evidence that supports the jury's finding that the Epsteins suffered damages in the amount of $40,578.19. This evidence discloses the Epsteins paid $55,000 to purchase stock in a corporation that they believed had no tax liability, but what they actually received was stock in a corporation that had a tax liability of $40,579.19.

The measure of damages in an action for fraud is the difference between the value the plaintiffs would have received if the facts had been as represented and the value actually received, together with any special and consequential loss which is the natural result of the fraud. *Starkey*, 281 S.C. at 313, 315 S.E. (2d) at 156.

Affirmed.

LITTLEJOHN, Acting Associate Justice, concurs.

GARDNER, J., dissents in a separate opinion.

GARDNER, Judge (dissenting):

I respectfully dissent.

The Howells present the following argument on appeal.

The trial court erred in not directing a verdict in favor of the Howells when the overwhelming weight of the evidence proved that Mervyn Epstein did not have a right to rely upon any representations made by Orris Howell because he testified that prior to the alleged representation he did not trust him and thought him to be unethical.

It is my opinion that at the time Orris Howell affirmed that the payroll taxes and FICA taxes had been paid, no fiduciary

relationship existed between the Epsteins and Orris Howell. At the time the alleged statement was made, the Epsteins and Howells were both represented by attorneys and were dealing at arm's length about the sale of the corporation. Mervyn Epstein testified he did not trust the Howells.

Confidential or fiduciary relations are deemed to arise whenever two persons have come into such a relation that confidence or trust is necessarily reposed by one in the other. *Chapman v. Citizens and Southern National Bank*, 302 S.C. 469, 395 S.E. (2d) 446 (Ct. App. 1990). *Also see Black's Law Dictionary*, p. 564 (5th Ed. 1979). It therefore is self-evident that if the Epsteins professed to have no confidence and trust in the Howells, then they cannot claim to be the beneficiary of a fiduciary relationship.

Admittedly, the Epsteins, at the time of the alleged misrepresentation, reposed no confidence or trust in the Howells. Mervyn Epstein testified that at that time he though the Howells were unethical and he did not trust them. And so without question, if there were a confidential relationship between the parties prior to the day in question, it had been extinguished by the disclaimer of trust and the declaration by the Epsteins that the relationship between the Epsteins and Howells was at an end. *See Pate v. Ford*, 297 S.C. 294, 376 S.E. (2d) 775 (1989). *Pate* relates to an express trust but the principles of failure, lapse, or extinguishment of a trust apply to fiduciary relationships just as they do to an express trust.

In my opinion, this case is controlled by *Florentine Corp., Inc. v. PEDA I, Inc.*, 287 S.C. 382, 339 S.E. (2d) 112 (1985). There the Supreme Court held that where there is no confidential or fiduciary relationship and an arm's-length transactions between mature, educated people is involved, there is no right to rely. This is especially true in circumstances where one should have utilized precaution and protection to safeguard his interest. The Court went on to hold that the right to rely is a necessary element that must be proved in fraud and deceit actions.

I would hold that under the circumstances of this case, the trial judge erred in failing to direct a verdict or in the alternative granting a post-verdict judgment n.o.v. on the basis that the Epsteins had no right to rely on the alleged misrepresen-

tation and therefore failed to prove an essential element of a fraud and deceit action.

I would also hold, assuming arguendo that the Howells are liable under a fraud and deceit action, that actual damages should be limited to one-half of the unpaid taxes. The Epsteins owed one-half of these taxes and if the parties, prior to the sale to the Epsteins, had each put in their half in order to cover the check that had been written for the taxes, the Epsteins would have no complaint. Accordingly, since the parties did not cover the outstanding check, the Epsteins were only damaged by what the Howells owed the corporation to pay their half of the taxes.

I would reverse and remand for entry of judgment in accordance with this dissent.