1974

HAROLD TYNER DEVELOPMENT BUILDERS, INC., Respondent v.
FIRSTMARK DEVELOPMENT CORPORATION, Appellant.

(429 S.E. (2d) 819)

Court of Appeals

*William Howell Morrison* and *Charles J. Baker, III,
Holmes & Thomson,* Charleston, *for appellant/respondent.*

*Andrew K. Epting, Jr., Wise & Cole,* and *George J. Kefalos,
Claypoole, Kefalos, Waggoner & Barrow,* Charleston, *for re-
spondent/appellant.*

Heard Feb. 16, 1993; Decided March 15, 1993.

Refiled April 12, 1993.

## ORDER

After reviewing the petition for rehearing in this case, it is ordered that the opinion heretofore filed by withdrawn and the attached opinion, wherein we amended the second paragraph of Part I, be substituted therefor. The petition for rehearing is denied.

It is so ordered.

GOOLSBY, Judge:

Harold Tyner Development Builders, Inc., brought this action against Firstmark Development Corporation expressly alleging causes of action for breach of contract, fraud, negligent misrepresentation, and reformation. The cause of action grew out of Firstmark's exercise of an option to purchase land from Tyner and Firstmark's subsequent refusal to close the purchase. The trial court directed verdicts for Firstmark on the breach of contract and reformation causes of action. It also directed a verdict for Firstmark on a cause of action for fraud in the inducement, a cause of action that the trial court apparently viewed as embraced within the general allegations of Tyner's complaint. A jury returned a general verdict on the fraud and negligent misrepresentation causes of action, awarding Tyner actual damages in the amount of $338,000 and punitive damages in the amount of $150,000. Both Firstmark and Tyner appeal. The issues we address concern the sufficiency of the evidence to support the jury's verdict, the trial court's refusal to submit a special verdict form, the trial court's charge on the measure of actual damages, and the trial court's charge on punitive damages. We affirm.

On April 29, 1987, Tyner and Firstmark entered into an agreement entitled "Option for the Sale and Purchase of Real Estate." The agreement gave Firstmark the option to purchase from Tyner certain undeveloped real estate known as Phase II-A and Phase II-B of Indian Springs Subdivision. Tyner planned to develop the property into building lots for single-family homes.

Under the agreement, Firstmark's option to purchase Phase II-A would expire after June 1, 1987. If it failed to exer-

cise its option to purchase Phase II-A, Firstmark would lose the $10,000 that it was required to deposit with an escrow agent as earnest money and its option to purchase Phase II-B. If it exercised its option, however, Tyner would have eleven months within which to complete the development of the building lots for sale to Firstmark for approximately $777,000 and Firstmark would have until November 1, 1988 to exercise its option on Phase II-B. If Firstmark exercised its option on Phase II-A but failed to exercise its option on Phase II-B, it would forfeit $5,000 of the $10,000 earnest money.

Firstmark exercised its option on Phase II-A on May 18, 1987 when its project manager, in a a letter sent by certified mail, advised Tyner that "we hereby give notice of our intent to exercise our option. . . ." The project manager also reminded Tyner that the option agreement required Tyner "[to] start development of the lots within thirty (30) days of this notice and [to] complete all development . . . on or before eleven (11) months from [the] date of notice [of the exercise of the option]."

Tyner thereafter attempted to secure a development loan. Its lender, First Federal of South Carolina, Firstmark's parent corporation, however, considered the agreement between Firstmark and Tyner still just an option and not a firm contract.

Tyner then wrote a letter to Firstmark on September 9, 1987, and requested a firm commitment from Firstmark that it intended to purchase the property so Tyner could obtain a development loan. Firstmark responded on September 16, 1987 in a letter in which it stated that its May 18, 1987 letter "clearly addresses the fact that we elected to exercise our option to purchase the first one-half of the lots to be developed in Indian Springs, Phase II." Firstmark's letter went on to point out that "[a]s the contract allows, our purchase of these lots is subject to your completing the development within the time required."

Tyner obtained alternate financing and commenced development of the property.

On March 3, 1988, before Tyner completed development of the lots and after Tyner had spent approximately $185,000 on the project, Firstmark's attorney notified Tyner in writing that Firstmark had decided not to close the Phase II-A sale.

Firstmark later tendered the $10,000 earnest money held in escrow to Tyner's attorney.

On July 14, 1988, Tyner sold Phases II-A and II-B to a third party for $568,596.69. Firstmark never exercised its option on Phase 11-B.

This action followed. Tyner's complaint alleged, among other things, that Firstmark had committed fraud and that Firstmark had been negligent "in making statements, giving advice and providing information to Tyner." The complaint did not allege Firstmark was reckless in making any representations to Tyner.

The jury returned a general verdict for Tyner in the amount of $338,000 actual damages and $150,000 punitive damages.

## I.

Firstmark contends the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict on the fraud and negligent misrepresentation causes of action. Firstmark asserts the evidence, viewed in the light most favorable to Tyner, fails to establish all the essential elements of these causes of action.

Regarding the cause of action for fraud, there was evidence presented at trial from which a jury could reasonably infer that Firstmark falsely assured Tyner that it intended to perform the contract by completing the purchase of the property in question and that Tyner suffered damage when he relied on this assurance. *See First State Sav. and Loan v. Phelps,* 299 S.C. 441, 385 S.E. (2d) 821 (1989) (fraud requires proof, among other things, of a false representation of a material fact, an intent that the false representation be acted on, and a consequent proximate injury). This assurance came to Tyner in a letter sent to it by Firstmark on September 16, 1987. Firstmark, moreover, provided this assurance to Tyner even though, as the jury could infer from the testimony of Firstmark's project manager, it then intended to rely on the liquidated damages provision[1] of the option agreement and not dis-

---

[1] Paragraph 15 of the option agreement provided:

If [Firstmark] shall fail . . . to perform or comply with any . . . term of this option . . . [Tyner's] sole remedy shall be to retain the deposit as liquidated damages. . . .

close to Tyner that it would claim the provision applied to the entire contract and not merely to the exercise of the option should Firstmark later decide not to complete the purchase of the property.

A key to Firstmark's actions may be found, perhaps, in a letter written by Firstmark on August 3, 1987, to Ernie Magaro, President of MARC Equity of South Carolina. MARC Equity had contracted to buy lots in Phase 1 from Firstmark, lots which Firstmark had purchase earlier from Tyner. The letter informed Magaro that MARC Equity was in default on the lot purchase agreement and asked that he advise Firstmark regarding when MARC Equity intended to close on the lots in had agreed to buy. Other evidence indicates Firstmark's decision to follow through on its contract with Tyner depended, at least in part, on whether Magaro remained in default of MARC Equity's agreement to buy Firstmark's lots. A clear inference, therefore, exists that Firstmark purposefully misled Tyner into believing that it was committed to completing the purchase of the subject property, although, unknown to Tyner, its decision regarding whether to complete the purchase or not depended to some degree on the actions of a third party.

Because we hold the evidence is sufficient to establish the cause of action for fraud, we need not discuss the sufficiency of the evidence to support the cause of action for negligent misrepresentations. *See Anderson v. West,* 270 S.C. 184, 241 S.E. (2d) 551 (1978) (a verdict will not be reversed where a jury returns a general verdict on two or more causes of action and its verdict supports at least one cause of action). Also, it is clear, as we discuss below, that the jury's general verdict encompassed only the cause of action for fraud.

## II.

Firstmark asserts the trial court erred in refusing to grant a mistrial after it admitted over objection evidence that generally related to the events surrounding the execution of the contract and the intent of the parties and later granted a directed verdict on the cause of action to which the evidence was directed.

Although Tyner did not expressly plead a cause of action alleging fraud in the inducement, the trial court, over First-

mark's objection, viewed the complaint as including a cause of action for fraud in the inducement and it allowed Tyner to introduce evidence in support of this cause of action. The trial court, however, directed a verdict on the fraud in the inducement cause of action. Firstmark moved for a mistrial, complaining about the evidence that Tyner had introduced in an effort to prove this cause of action.

No reversible error occurred, even if the trial court improperly admitted the questioned evidence and wrongly construed the complaint to allege a cause of action for fraud in the inducement. The trial court took measures to cure any prejudice suffered by Firstmark because of the admission of the evidence when it instructed the jury to focus on the events occurring in September, 1987. Even Firstmark's counsel conceded that the "[f]ixing of the date [went] a long way toward curing [his] problem." *See Smoak v. Seaboard Coast Line Railroad Co.*, 259 S.C. 632, 193 S.E. (2d) 594 (1972) (wherein the court held a trial court's instruction to the jury to ignore remarks given by a witness in a unresponsive answer to a question cured any prejudice caused by the witness's remarks).

### III.

Firstmark asserts the trial court erred in refusing its request for a special verdict form. The question of whether to grant a party's request for a special verdict from is a matter committed to the sound discretion of the trial court and we find no abuse of discretion here. *See* Rule 49(a), SCRCP ("The court *may* require a jury to return only a special verdict. . . ." (emphasis added)); *Gamble v. Stevenson*, 305 S.C. 104, 107, 406 S.E. (2d) 350, 352 (1991) ("[T]he determination as to whether special verdict forms should be submitted to the jury is within the sound discretion of the trial judge."). Again, as we discuss below, it is clear which cause of action the jury based its verdict upon.

### IV.

Firstmark contends the trial court erred in charging the jury that actual damages could be based on the benefit of the bargain and in refusing to charge the jury that it must limit its consideration of damages to Tyner's out-of-pocket loss. The trial court committed no reversible error.

As we noted above, Tyner's complaint alleged fraud and negligent misrepresentation. Although the jury brought back a general verdict on causes of action alleging fraud and negligent misrepresentation, the jury necessarily found for Tyner on the cause of action alleging fraud because its verdict included punitive damages. Punitive damages are not recoverable, as the trial court instructed the jury, in an action based on negligent conduct. *Hicks v. Mc-Clandlish*, 221 S.C. 410, 70 S.E. (2d) 629 (1952); *see Lengel v. Tom Jenkins Realty, Inc.*, 286 S.C. 515, 334 S.E. (2d) 834 (Ct. App. 1985) (verdict for plaintiff on a cause of action for negligent misrepresentation did not support an award of punitive damages in the absence of proof of a willful, wanton, or reckless act). They are recoverable, however, in an action based on fraud. *See Elders v. Parker*, 286 S.C. 228, 332 S.E. (2d) 563 (Ct. App. 1985) (even though the jury returned a general verdict in an action for breach of contract and fraud, the plaintiff was held entitled to punitive damages where the evidence supported a finding of fraud). Damages based on the benefit of the bargain are recoverable in a fraud action. *Starkey v. Bell*, 281 S.C. 308, 315 S.E. (2d) 153 (Ct. App. 1984).

## V.

Firstmark asserts the trial court erred in its charge to the fury on punitive damages in that the trial court charged a "greater weight of the evidence" standard in violation of S.C. Code Ann. § 15-33-135 (Supp. 1992).[2]

Section 15-33-135 changed the common law burden of proof on punitive damages from the greater weight of the evidence to clear and convincing evidence. The legislature expressly made the statute applicable "to those causes of action arising or accruing on or after [April 5, 1988]." 1988 S.C. Acts 432 § 10, at 2903. Here, the cause of action arose no later than March 3, 1988, the date on which Firstmark notified Tyner of its intent not to specifically perform under the contract and tendered the $10,000 that it alleged was owing under the liquidated damages provision. *See 37 C.J.S. Fraud*

---

[2] Section 15-33-135 provides:

in any civil action where punitive damages are claimed, the plaintiff has the burden of proving such damages by clear and convincing evidence.

§ 71 at 367 (1943) ("A cause of action in deceit accrues immediately on the successful consummation of the fraud."); *see also* 37 Am. Jur. (2d) *Fraud and Deceit* § 419, at 568 (1968) ("It is a general principle that where fraud is committed against a person . . . he has an immediate right of action therefor.").

## VI.

Because we affirm the verdict in Tyner's favor, it is not necessary to reach Tyner's cross-appeal. Tyner expressly conditioned its appeal on this court's finding grounds for reversal.

Affirmed.

CURETON, J., and LITTLEJOHN, ACTING J., concur.