23078

FIRST STATE SAVINGS AND LOAN, Div. Poughkeepsie Savings Banks, FSB, Respondent v. Robert PHELPS, Appellant. FIRST STATE SAVINGS AND LOAN, Div. Poughkeepsie Savings Banks, FSB, Respondent v. Margo PHELPS, Appellant.

(385 S. E. (2d) 821)

Supreme Court

*Robert* and *Margo Phelps*, Campobello, *pro se.*

*Judson K. Chapin, III*, of *Perrin, Perrin, Mann & Patterson*, Spartanburg, *for respondent.*

Heard March 7, 1989.

Decided Sept. 5, 1989.

TOAL, Justice:

First State Savings & Loan, Div. Poughkeepsie Savings Banks, FSB, (the Bank) brought separate actions against Robert and Margo Phelps (the Phelps) to recover monies due upon two promissory notes previously executed in favor of the Bank. These two actions were subsequently consolidated. The Phelps answered, denying liability on the notes and counterclaimed against the Bank in causes of action sounding in warranty and fraud. At the close of the evidence, the trial court directed a verdict in favor of the Bank in its action upon the promissory notes and in the two counterclaims made by the Phelps.

The Phelps appealed, arguing that the trial court erred in directing a verdict against them on their counterclaims and in failing to permit Ms. Phelps to testify regarding certain elements of the Phelps' alleged damages. We affirm.

## ISSUES

(1) Viewing the evidence and all inferences reasonably deduced therefrom in the light most favorable to the Phelps, was there sufficient evdience to warrant submission of the fraud and warranty claims to the jury?

(2) Did the trial court err in excluding Ms. Phelps' testimony relating to the Phelps' alleged damages?

## FACTS

In 1985, the Bank took possession of a number of horses which had been collateral for a loan, defaulted upon by a third party who is not connected with this action.

The Phelps were customers of the Bank and known to the Bank's local branch manager as individuals who were involved with and knowledgeable about horses. The branch manager approached the Phelps and asked them if they knew anyone who might wish to purchase the horses from the Bank. Initially, the Phelps assisted the branch manager in attempting to find someone to purchase the horses. When these efforts proved fruitless, the branch manager asked the Phelps to buy some of the horses, promising to loan them the money they would need to complete the purchase.

During these negotiations, the branch manager told the Phelps the horses were "registered." The Phelps testified that registration papers, which vouch for the blood line of the animal, are critical to the sale of horses, as horses which are registered are worth substantially more than those which are not registered.

In July 1985, the Phelps borrowed $7,500.00 from the Bank, $5,850.00 of which they paid to the Bank for fifteen of the horses, and the remainder of which they used to care for the newly purchased horses. The Bank held various pieces of the Phelps' farm equipment as security for the loan. The Phelps took possession of the horses within a few days.

The Bank delivered the registration papers on two of the horses to the Phelps at the sale, however, the Bank did not deliver the last of the papers for the other eleven adult horses until November of 1985. The remaining two horses were foals and had not yet been registered. The Bank eventually provided the Phelps with the certificates necessary to apply for the registration of the foals. These latter two certificates had typographical errors corrected with "White Out." It was uncontroverted that the delay in the delivery of

the papers prevented the Phelps from immediately selling the horses.

The Phelps defaulted on the notes, and the Bank brought this action. The Phelps counterclaimed alleging fraud in the negotiation and consummation of the sale of the horses, and breach of warranty, in that the horses were represented as high quality registered horses.

The trial court directed a verdict in favor of the Bank on the promissory notes and directed a verdict against the Phelps on their counterclaims. This appeal by the Phelps, as to the counterclaim, followed.

## LAW/ANALYSIS

### Issues Properly Before the Court

The Phelps were represented by counsel during the trial proceedings. Trial counsel prepared and submitted the Transcript of Record for the appeal to this Court, however, the Phelps appeared *pro se* before this Court in brief and at argument.

Initially, the Phelps at oral argument alleged that the trial court erred in directing a verdict in favor of the Bank on its claim against them on the promissory notes. This issue is not properly before the Court, as: (1) no exception was taken to this portion of the trial court's Order, *Odom v. County of Florence,* 258 S. C. 480, 189 S. E. (2d) 293 (1972) (in absence of a proper exception there is nothing for an appellate court to review); (2) the Statement of the Case recites "[n]o appeal is taken as to [this] ruling," *United Fabrics Corp. v. Delaney,* 241 S. C. 268, 128 S. E. (2d) 111 (1962) (statement of the case binding on all parties to the case); and (3) the Phelps did not argue the issue in their brief, *Nienow v. Nienow,* 268 S. C. 161, 232 S. E. (2d) 504 (1977); *McGann v. Mungo,* 287 S. C. 561, 340 S. E. (2d) 154 (Ct. App. 1986).

In support of their contention that they were not liable on the notes, the Phelps argued facts which are not a part of the record in violation of the Rules of Practice in the Supreme Court of South Carolina, Rule 8, § 7. Such facts may not be considered by this Court. Supreme Court Rule 8, § 7; *Becker v. Uhe,* 221 S. C. 334, 70 S. E. (2d) 346 (1952).

The Phelps argue in brief and at oral argument that the record before this Court is incomplete.[1] In order to assure ourselves that an injustice was not being done, this Court obtained a complete transcript of the proceedings below pursuant to Supreme Court Rule 2. Our review of the full transcript discloses that the Phelps, through counsel, consented to a directed verdict in favor of the Bank in its claim on the promissory notes. As the Phelps consented to the directed verdict on the Bank's claim, this Court could not offer relief on appeal even if the issue was properly preserved for review. *See Floyd v. Thornton*, 220 S. C. 414, 68 S. E. (2d) 334 (1951); *Thigpen v. Thigpen*, 217 S. C. 322, 60 S. E. (2d) 621 (1950).

The two issues raised by the exceptions, and properly before the Court, allege the trial court erred in directing a verdict against the Phelps on their fraud and warranty counterclaims and in refusing to permit Ms. Phelps to offer certain damages testimony.

## 1. DIRECTED VERDICTS

### *Standard of Review*

In reviewing a directed verdict, this Court must review the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the granted motion. In essence, this Court must determine whether a verdict for a party opposing the motion would be reasonably possible under the facts as liberally construed in his favor. *Bultman v. Barber*, 277 S. C. 5, 281 S. E. (2d) 791, 792 (1981). In order to make such a review, this Court must determine the elements of the action alleged and whether any evidence existed on each element. *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 283 S. C. 155, 321 S. E. (2d) 602 (Ct. App. 1984) writ granted in part 285 S. C. 84, 328 S. E. (2d) 479 (1985) quashed 287 S. C. 190, 336 S. E. (2d) 472 (1985).

### *Fraud*

The elements of fraud are: a representation; its falsity; its materiality; knowledge of its falsity or a reckless disregard of its truth or falsity; intent that

---

[1] The Phelps did not petition to supplement the record as provided in Supreme Court Rule 8, § 7.

the representation be acted upon; hearer's ignorance of its falsity; hearer's reliance on its truth; hearer's right to rely; and hearer's consequent and proximate injury. *Florentine Corp., Inc. v. PEDA I, Inc.*, 287 S. C. 382, 339 S. E. (2d) 112 (1985). Fraud must be proven by clear, cogent and convincing evidence. *Anderson v. Citizens Bank*, 294 S. C. 387, 365 S. E. (2d) 26 (Ct. App. 1987).

The first representation upon which the Phelps base their fraud claim is that the bank manager told them the horses were registered. It is uncontroverted that thirteen of the horses were registered, and the Phelps received the registration papers. The two foals, due to their young age, had not yet been registered, but the Phelps were given papers which would enable them to register the foals. Thus, evidence of the most basic requirement of fraud, the falsity of the representation, is absent from the Phelps' case.

The second representation upon which the Phelps base their fraud claim is that the branch manager told them he would get the remaining registration papers to them within a few days. The papers were actually delivered to them some four months later. This representation is a representation as to a future event and, as such, is not actionable in fraud as no evidence was presented to show the branch manager entertained a present intention not to obtain the papers in the stated time. *Scott v. Mid Carolina Homes, Inc.*, 293 S. C. 191, 359 S. E. (2d) 291 (Ct. App. 1987).

Because evidence of all of the elements necessary to establish fraud was absent from the Phelps' case, the trial court properly directed a verdict for the Bank on the fraud cause of action.

### Warranty

The Phelps claim the Bank breached an express oral warranty. The warranty is based upon the horses allegedly having been represented by the Bank as high quality, registered horses. South Carolina Code Ann. § 36-2-313(1) (Law. Co-op 1976) provides in pertinent part:

Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise, ... made by the seller to the buyer, whether directly or indirectly, which relates to the goods and becomes part of the basis

of the bargain creates an express warranty that the goods conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

In order to show a breach of an express oral warranty, the Phelps must have shown the existence of the warranty, its breach by the failure of the goods to conform to the warranted description, and damages proximately caused by the breach. *See Bell v. Harrington Mfg. Co.*, 265 S. C. 468, 219 S. E. (2d) 906 (1975); *W. R. Grace & Co. v. LaMunion*, 245 S. C. 1, 138 S. E. (2d) 337 (1964).

The Phelps have failed to present evidence from which a jury could find the breach of an express oral warranty that the horses were high quality, registered horses. As discussed above, the adult horses were registered. The bank provided certificates so that the foals could be registered. The Phelps argue the alterations to these certificates prevented them from registering the foals. However, the Phelps offered no evidence that the Bank was responsible for altering the documents. Thus, the Phelps have failed to present evidence which tends to show the goods failed to conform to the guaranteed condition.

The Phelps contend the horses were not high quality horses, but were emaciated and sick when received from the Bank. It was uncontroverted that the inducement for the Phelps having entered into the transaction with the Bank was the prospect of a large profit they could make in purchasing the horses, at a bargain price reflecting their sickened condition, restoring the horses' health through good care, and selling the horses in an improved state of health. The Phelps inspected the horses, were aware of their condition and do not allege any latent defect or illness with the horses nor any breach of an implied warranty of fitness.

The alleged representation of high quality could not have been a warranty forming a part of the basis for the bargain, because the conceded bargained for condition of the horses was different from that of the alleged warranty.

The trial court properly directed a verdict on the Phelps' warranty claim.

## 2. DAMAGE TESTIMONY

The Phelps argue the trial court erred in refusing to permit Mrs. Phelps to testify as to certain elements of the Phelps' damages. The Phelps sought to recover the cost of boarding the horses from the time they took possession of the horses until the registration papers were delivered. Mrs. Phelps offered to testify as to the price she and her husband charged the Bank for boarding horses at their stable in an unrelated transaction. The trial court excluded this proffered testimony on relevancy grounds.

In order for this Court to reverse the trial court for ■ erroneously excluding evidence, the appellants must show both the error of the ruling and prejudice resulting therefrom. *Timmons v. South Carolina Tricentennial Commission,* 254 S. C. 378, 175 S. E. (2d) 805 (1970) appeal dismissed, certiorari denied 400 U. S. 986, 91 S. Ct. 460, 27 L. Ed. (2d) 435 (1971) rehearing denied 401 U. S. 949, 91 S. Ct. 922, 28 L. Ed. (2d) 233 (1971); *Cumbie v. Cumbie,* 245 S. C. 107, 139 S. E. (2d) 477 (1964).

Any error the trial court may have made in excluding ■ Mrs. Phelps' proferred testimony is harmless. The Phelps cannot show prejudice as the Phelps failed to establish the Bank's liability on their counterclaims. A directed verdict against the Phelps would have been proper had the trial court admitted this evidence.

The opinion of the Circuit Court is affirmed.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.