612 S.E.2d 730

John N. LoPRESTI and Janice LoPresti, Appellants,

v.

John BURRY, Rabon Creek Watershed Conservation District of Fountain Inn, South Carolina, Everette H. Babb, Frederick E. Landrith, Landrith Surveying, Inc., and Greenville County, Defendants,

Of Whom John Burry and Rabon Creek Watershed Conservation District of Fountain Inn, South Carolina are, Respondents.

No. 3982.

Court of Appeals of South Carolina.

Heard March 10, 2005.

Decided April 25, 2005.

Rehearing Denied August 29, 2005.

272

Michael Stephen Chambers, of Greenville, for Appellants.

Christopher R. Antley, John Robert Devlin, Jr. and W. Francis Marion, Jr., all of Greenville, for Respondents.

GOOLSBY, J.:

John and Janice LoPresti appeal the grant of summary judgment to John Burry and the Rabon Creek Watershed Conservation District of Fountain Inn in their lawsuit arising

from their purchase of a home encumbered by a flood easement. We affirm.

In the summer of 1976, Burry bought 172 acres of land, known as tract 34, in Greenville and Laurens counties. Several months later, in conjunction with a federal flood control project, Rabon Creek requested and received an easement from Burry for the construction of a dam on tract 34 and the impoundment of water to create Lake Beulah. Rabon Creek recorded the easement in both Greenville and Laurens counties.

In 1986, after the construction of the dam and lake, Burry subdivided the remaining property into lots, which he later sold to various individuals. As part of the process of preparing the lots for sale, Burry hired surveyor T.H. Walker to prepare a subdivision survey plat of the property, instructing him to survey and plat lots approximately one acre in size next to the lake.

After conducting the field surveys, Walker presented Burry with a plat that contained a dotted line labeled "Flood Plane" [sic] that ran across the numbered lots abutting the lake. The line represented the elevation of the spillway of the dam to be 718.5 feet. At Burry's instructions, Walker removed the line, and Burry recorded the altered plat without the "flood plane" line.

In 1990, Burry conveyed lot 12, one of the lakefront lots, to William V. and Tammy M. Easterday. The Easterdays constructed a home on the lot and located it within Rabon Creek's easement. In 1993, the Easterdays conveyed the home and lot to Marion Harrison. In 1994, the Harrisons conveyed the property to the LoPrestis.

It appears undisputed that, before and during the LoPrestis' purchase of their home, Rabon Creek did not actually perform the inspections required by an "Operation and Maintenance Agreement" that it entered into with the United States Department of Agriculture. Specifically, the agreement required Rabon Creek to "prohibit the installation of any structure or facilities that will interfere with the operation or maintenance of the project measures." The inspections were actually performed by the Department of Agriculture. Moreover, although construction on the LoPrestis' home began in

1991, the inspection reports did not acknowledge this fact until 1994, when notations began to appear in the reports about houses located in the floodplain area. Even then, Rabon Creek took no action regarding this development.

Unusually heavy rainfall during January 1995 caused the lake to flood the LoPrestis' finished basement to a height of about fourteen inches. In August 1995, the remnants of Hurricane Jerry caused the lake level within the flood easement to rise and flood the Loprestis' home, completely engulfing their basement and coming to within four inches of the finished elevation of the second floor above the basement.

In 1996, the LoPrestis brought this action against Burry, Rabon Creek, and other defendants alleging various causes of action arising out of the damage to their property. The LoPrestis' lawsuit was later consolidated with three other similar cases.

In 1997, the trial court issued an order granting partial summary judgment as to the existence of the easement as initially executed and filed but denying summary judgment as to the scope, extent, and continuing validity of the easement and as to various affirmative defenses to Rabon Creek's right to enforce it. In 1998, following a consolidated bench trial on the remaining issues, the trial court issued an order ruling that the easement extended to the top of the dam elevation, but also that Rabon Creek was estopped from enforcing it against all parties except Burry.

On appeal, this court held the easement was clear and unambiguous and Rabon Creek had the right to flood the land surrounding the lake up to the top of the dam, that is, to an elevation of 724.5 feet.[1] This court further held the LoPrestis and other aggrieved homeowners had at least constructive notice of the easement and, because of this notice, Rabon Creek could not be equitably estopped from enforcing it.[2]

Following the supreme court's denial of certiorari in the case on October 23, 2002, the case was returned to the trial

---

[1]. *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn,* 348 S.C. 58, 68, 558 S.E.2d 902, 907 (Ct.App.2001), *cert. denied* (Oct. 23, 2002).

[2]. *Id.* at 72, 558 S.E.2d at 909.

court to complete proceedings consistent with this court's opinion. The remaining issues arise from the LoPrestis' claims against Burry for fraud, fraudulent concealment, negligent and reckless nondisclosure of land defects, breach of warranty, and violation of the South Carolina Unfair Trade Practices Act and the LoPrestis' negligence claim against Rabon Creek.

Both Burry and Rabon Creek moved for summary judgment. By order dated April 25, 2003, the trial court granted summary judgment to Burry and Rabon Creek on all the LoPrestis' causes of action, holding the determination by this court that the homeowners had unambiguous record notice of the presence and scope of the easement precluded any recovery against either Burry or Rabon Creek.[3]

1. The trial court dismissed the LoPrestis' claims against Burry for fraud, constructive fraud, negligent misrepresentation, fraudulent concealment, and negligence based on a finding that they were charged with constructive notice of the flood easement. The LoPrestis argue the trial court incorrectly determined they had no right to rely on the misrepresentation allegedly created by the alteration of the survey plat.

We find no error.

In our prior decision, we held the LoPrestis were charged with constructive notice of the easement because it was properly recorded in the homeowners' chain of title.[4] We noted in reaching this conclusion: "One with knowledge of the truth or the means by which with reasonable diligence he could acquire knowledge cannot claim to have been mis[led]." [5]

■ The LoPrestis argue that removal of the dotted line depicting the floodplain from the recorded subdivision plat amounted to a misrepresentation on Burry's part. Relying on

---

3. In the same order, the trial court denied summary judgment to Greenville County, holding a material issue of fact existed as to whether the conduct of the County in issuing a building permit fell within an exception to the South Carolina Tort Claims Act.

4. *Binkley,* 348 S.C. at 71, 558 S.E.2d at 908.

5. *Id.* at 72, 558 S.E.2d at 909 (quoting *S. Dev. Land & Golf Co. v. South Carolina Pub. Serv. Auth.,* 311 S.C. 29, 34, 426 S.E.2d 748, 751 (1993)).

*Reid v. Harbison Development Corp.*[6] and *Slack v. James,*[7] the LoPrestis contend one who commits a fraud cannot defeat a claim for misrepresentation simply because the person defrauded is charged with notice under a recording statute. Based on this rationale, the LoPrestis assert the question of whether their reliance on the altered plat was reasonable presented an issue of material fact for a jury to determine.

We have found nothing in the record, however, to support the argument that the LoPrestis justifiably relied on the absence in the plat of dotted lines showing the floodplain.[8]

■■ As this court held in *Reid,* "the true test of the hearer's right to rely on misrepresentations as to matters of record is whether or not he acted with reasonable prudence in so doing." [9] Furthermore, "[t]he law imputes to a purchaser of real estate notice of the recitals contained in the written instruments forming his chain of title *and charges him with the duty of making such reasonable inquiry and investigation as is suggested by the recitals and references therein contained.*" [10]

The recorded plat purports only to give a general layout of the lots for the subdivision—both waterfront and non-waterfront. Moreover, the deed transferring the property in question to the LoPrestis makes reference to the plat only "for more [a] complete metes and bounds description" [11] and clear-

---

6. 285 S.C. 557, 330 S.E.2d 532 (Ct.App.1985), *aff'd in part and remanded on other grounds,* 289 S.C. 319, 345 S.E.2d 492 (1986).

7. 356 S.C. 479, 589 S.E.2d 772 (Ct.App.2003), *cert. granted* (Oct. 6, 2004).

8. *See First State Sav. & Loan v. Phelps,* 299 S.C. 441, 447, 385 S.E.2d 821, 824 (1989) (noting the hearer's reliance on the representation and the hearer's right to rely as required elements of a cause of action for fraud).

9. *Reid,* 285 S.C. at 561, 330 S.E.2d at 535 (quoting 37 C.J.S. *Fraud* § 34c at 281 (1943)).

10. *McDonald v. Welborn,* 220 S.C. 10, 16, 66 S.E.2d 327, 330 (1951) (emphasis added) (citations omitted).

11. *Cf. Lancaster v. Smithco, Inc.,* 246 S.C. 464, 468–69, 144 S.E.2d 209, 211 (1965) ("The question as to the purpose and effect of a reference to

ly qualifies the conveyance as "subject to any and all existing reservations, easements, rights-of-way, zoning ordinances and restrictions or protective covenants that may appear of record or on the premises." Finally, the record contains no evidence suggesting that the altered plat induced the LoPrestis not to make a complete review of the public records or request a detailed survey of the property before purchasing it.[12]

■ 2. The LoPrestis argue the trial court erred in finding Rabon Creek was immune from negligence liability pursuant to the exceptions to the waiver of liability in sections 15–78–60(2), (4), (5), and (13) of the South Carolina Tort Claims Act.[13]

We find no reversible error.

Our review of the briefs shows that, although the LoPrestis presented a reasonably detailed argument regarding the applicability of section 15–78–60(5) to this case, they gave only conclusory statements about exceptions (2), (4), and (13) of the statute. Because section 15–78–60 absolves a governmental entity from liability if any one of the criteria enumerated in the statute is satisfied, it follows that, regardless of whether dismissal of the LoPrestis' action was warranted under section 15–78–60(5), we must accept the trial court's findings that the other exceptions cited in the appealed order exempt Rabon Creek from liability.[14]

---

a plat in a deed is ordinarily one as to the intention of the parties to be determined from the whole instrument and the circumstances surrounding its execution.... A plat ... is not an index to encumbrances.").

12. *See Reid,* 285 S.C. at 561, 330 S.E.2d at 534 (noting the doctrine of constructive notice is inapplicable especially "where the very representations relied on induced the hearer to refrain [from] an examination of the records, where the employment of an expert would have been required to deduce the truth from an examination of the records, where confidential relations existed, or where the defrauded party was inexperienced").

13. S.C.Code Ann. § 15–78–60(2), (4) and (5) (2005).

14. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (stating an appellant was deemed to have abandoned an issue for which he failed to provide any argument or supporting authority); *Biales v. Young,* 315 S.C. 166, 168, 432 S.E.2d 482, 484

3. We have considered the LoPrestis' remaining arguments regarding the substantive merits of their lawsuit: that a jury question exists as to whether Burry's alteration of the plat amounted to a "positive misrepresentation by conduct"; that the trial court erred in finding Burry was not required to disclose the easement and in holding their claim for fraudulent concealment was not actionable as a matter of law; that the trial court erred in granting summary judgment to Burry on their causes of action for negligent or reckless nondisclosure of land defects; that the trial court incorrectly found that Rabon Creek had no duty to prevent the construction of homes within its flood easement; and that the trial court erroneously held no fact issue existed as to whether the doctrine of comparative negligence barred their negligence claim against Rabon Creek. The fact that the LoPrestis had constructive notice of the easement and the absence of any special relationship between the LoPrestis and either Burry or Rabon Creek that would require disclosure of a matter of public record are dispositive of these arguments.[15]

---

(1993) (holding the failure to challenge an alternative ground for a holding constitutes abandonment of the issue and precludes further review of that holding on appeal); *R & G Constr., Inc. v. Lowcountry Reg'l Transp. Auth.*, 343 S.C. 424, 437, 540 S.E.2d 113, 120 (Ct.App. 2000) (deeming an issue abandoned if the appellant's brief treats it in a conclusory manner).

**15.** *See Lawson v. Citizens & S. Nat'l Bank of S.C.*, 259 S.C. 477, 485, 193 S.E.2d 124, 128 (1972) (stating a vendor of a residence must disclose to the purchaser material facts that are known only to the vendor and not available to the purchaser through diligent inquiry); *State v. Parris*, 353 S.C. 582, 593, 578 S.E.2d 736, 742 (Ct.App.2003) (noting the relationship between the buyer and the seller in a property transaction is "ordinarily not fiduciary"), *rev'd on other grounds*, 363 S.C. 477, 611 S.E.2d 501 (2005); *Pitts v. Jackson Nat'l Life Ins. Co.*, 352 S.C. 319, 335, 574 S.E.2d 502, 510 (Ct.App.2002) (stating that nondisclosure becomes fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction and that such a duty arises only if there are indications that the relationship between the parties is fiduciary in nature); *Restatement (Second) of Torts* § 353(1)(a) (1965) (suggesting a seller of real property may be liable for negligent nondisclosure of defects in the land, but specifying as a condition precedent before liability can be imposed that "the vendee does not know or have reason to know of the condition or the risk involved"); 28 Am. Jur. 2d *Estoppel and Waiver*, § 100, at 524 (2000) ("Because of the doctrine of constructive notice, there is little duty, outside the avoidance of affirmative

4. The LoPrestis also argue the trial court erred in finding their claims were barred by the equitable doctrine of laches. Having already affirmed the trial court's grant of summary judgment on all the LoPrestis' causes of action, we need not reach this issue.[16]

**AFFIRMED.**

HUFF and STILWELL, JJ., concur.

---

misleading acts, which is imposed upon the holder of an interest in property, where his or her interest in land is disclosed by the public record."), *quoted in Binkley*, 348 S.C. at 71, 558 S.E.2d at 910.

16. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that if an appellate court's ruling on a particular issue is dispositive of an appeal, rulings on remaining issues are unnecessary).