THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 John E. Kelley, Jr. and Mary V. Kelley, Appellants,
 
 
 

v.

 
 
 
 Sandra P. Herman and the Home Place, d/b/a Americas Home Place, Defendants,
 of whom Sandra P. Herman is the, Respondent.
 
 
 

Appeal From Laurens County
 Wyatt T. Saunders, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-299
Submitted June 1, 2006  Filed June 29, 2006    

AFFIRMED

 
 
 
 Max Thomas Hyde and Donald Coggins, Jr., of Spartanburg, for Appellants.
 John Michael Turner, of Laurens, for Respondent.
 
 
 

PER CURIAM:  The plaintiffs, John E. Kelley, Jr. and Mary V. Kelley, appeal from an order granting summary judgment to the defendant, Sandra P. Herman.  The action arises out of a real estate purchase in which the Kelleys claim Herman misrepresented which lot she was selling them.  We affirm.[1]
FACTS
We review, as we must, the evidence and all reasonable inferences in the light most favorable to the Kelleys.  In early 2001, the Kelleys, a deaf couple, contacted The Home Place, Inc., a home builder with offices in Greenville, South Carolina, about their desire to purchase or build a home in Laurens County, South Carolina.  The Home Place put them in touch with Herman, who resided in the Hickory Forest subdivision of Laurens County and owned several lots there.  
Mr. Kelleys mother contacted Herman, who told her that she had several pieces of property for sale.  Subsequently, the Kelleys, accompanied by Mr. Kelleys parents, rode out to the subdivision late one afternoon at dusk to look at the property.  Hermans lots were on a cul-de-sac at the end of Hickory Forest Drive.  As the Kelleys drove out of the cul-de-sac, they encountered Herman, who lived in the area and was approaching the cul-de-sac from the opposite direction.  They both stopped their cars in front of an empty lot (the Level Lot) that was owned by the Friendship Presbyterian Church.  Herman owned Lot A, which is located next door to the Level Lot.    
Herman spoke to Mr. Kelleys parents and the Kelleys observed her point in the direction of the Level Lot.  Herman allegedly told Mr. Kelleys parents that this was Lot A and was available for sale.  Herman also gave the Kelleys and Mr. Kelleys parents a copy of a plat indicating Lot A was available for sale.  Mr. Kelleys parents communicated in American Sign Language with the Kelleys.  The Kelleys did not understand the conversation Herman had with Mr. Kelleys parents, but his parents interpreted for them.  
On or about February 22, 2001, the Kelleys entered into a contract of sale with Herman to purchase land described as Lot A, Hickory Forest Drive, Laurens, South Carolina 29360 for the stated sum of $26,908.00.  Prior to the closing, the Kelleys paid for a survey of Lot A that was prepared on April 30, 2001.  The survey showed Lot A, totaling 3.99 acres, was situated on a cul-de-sac and had a creek running across the property.  The closing occurred on May 11, 2001.  In describing the property, the deed referenced the April 30, 2001 survey.  
The Kelleys, who had signed a contract with The Home Place for the construction of a home, visited the Level Lot numerous times and had the lot staked out and a sign installed by a representative of The Home Place indicating a home was to be built on the site.  Although Herman lived within view of the Level Lot, she never advised the Kelleys that they were attempting to build on the wrong lot.  According to the Kelleys, they first became aware they had purchased Lot A instead of the Level Lot when they tried unsuccessfully to obtain a septic tank permit after the closing.  They contend without a permit the land is unsuitable for building, at least at the projected cost they had anticipated.     
The Kelleys instituted this action against Herman, alleging, among other things, that she committed fraud by misleading them regarding the property that she was selling.[2]  The trial court granted Hermans motion for summary judgment, finding as a matter of law that the Kelleys had not established a claim for fraud as they had no justifiable right to rely on any representations made by Herman.  The court observed [t]he Kelleys had a duty to read the contents of the documents before signing them and a duty to exercise reasonable care to protect themselves.  The court noted the Kelleys can read and write to some degree and Mr. Kelley is capable of comprehending drawings and blueprints, which he does in his work.[3]  Further, [t]he Kelleys had three months between the signing of the contract and the closing to review the property and plans.  Finally, the court noted the Kelleys had an interpreter at the closing and they were represented by an attorney.  The Kelleys appeal.  
STANDARD OF REVIEW
Under the South Carolina Rules of Civil Procedure, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP; see also Standard Fire Ins. Co. v. Marine Contracting & Towing Co., 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990).  When reviewing the grant of a motion for summary judgment, an appellate court applies the same standard applied by the trial court under Rule 56(c), SCRCP.  Fleming v. Rose, 350 S.C. 488, 567 S.E.2d 857 (2002).  The evidence and all reasonable inferences that can be drawn therefrom must be viewed in the light most favorable to the party opposing the motion.  Summer v. Carpenter, 328 S.C. 36, 42, 492 S.E.2d 55, 58 (1997).
LAW/ANALYSIS
The Kelleys contend the trial court erred in granting summary judgment to Herman because there are questions of fact for a jury regarding whether Herman acted fraudulently in connection with the sale of Lot A to [them] and whether they had a justifiable right to rely on [Hermans] representations.  They contend Herman misled them regarding the lot she was selling because they purchased property designated as Lot A, which is a hilly, less desirable lot arguably unsuitable for building at the price they expected, and they were led to believe they were purchasing the Level Lot.
To prove fraud, one must show, among other things, a representation and the hearers right to rely thereon.  First State Sav. & Loan v. Phelps,  299 S.C. 441, 446-47, 385 S.E.2d 821, 824 (1989).  Fraud must be proven by clear, cogent and convincing evidence.  Id. at 447, 385 S.E.2d at 824.  
It is well settled in this State that one cannot complain of fraud in the misrepresentation of the contents of a written instrument in his possession when the truth could have been ascertained by his reading the instrument. Doub v. Weathersby-Breeland Ins. Agency, 268 S.C. 319, 326, 233 S.E.2d 111, 114 (1977).  One entering into a contract should read it and avail himself of every reasonable opportunity to understand its contents and meaning.  Id.  
A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it.  Regions Bank v. Schmauch, 354 S.C. 648, 663, 582 S.E.2d 432, 440 (Ct. App. 2003).  One who signs a written instrument has the duty to exercise reasonable care to protect himself.  Id. at 440, 582 S.E.2d at 664.  This rule is subject to the exception that if the party is ignorant and unwary, his failure to read the document may be excused.  Id.  This exception is very strictly construed, however, and [i]n determining whether a party can be classified as ignorant and unwary, an individuals education, business experience and intelligence are all considered.  Id.
The allegations of fraud made by the Kelleys rest upon the actions of Herman at the parties initial meeting and at two subsequent meetings.  First, the Kelleys argue Herman at their initial meeting clearly indicated by gesturing and pointing that the Level Lot directly across from where they were parked was available for sale.  They say they were not able to read the plat Herman offered them as it was late in the afternoon, dusk, and they also have some trouble reading and writing English.  Next, the Kelleys assert that at a meeting with Herman on February 10, 2001 to go over the sales contract, the Kelleys gestured to make sure that the land was flat, and Herman assured us and said yes, indicating the lot was flat.  Finally, the Kelleys contend that at the closing, they asked questions about whether the land was flat and about the creek on the property and was again assured by Herman that everything was fine, that the land was buildable, that we would be able to build on the land.  The Kelleys did not speak directly to Herman as she was in a waiting room next door during the closing, but the Kelleys had an interpreter present and relayed their questions through their attorney, who did speak to Herman.   
The Kelleys rely on Slack v. James, 364 S.C. 609, 614 S.E.2d 636 (2005), in which our supreme court held that questions about whether a buyers reliance on the sellers misrepresentations was reasonable should be determined by a jury, even though the falsity of the alleged misrepresentation could have been ascertained by examining the public records.  In that case, the buyers were affirmatively told by the sellers real estate agent that there were no easements on the property before entering into a sales contract.  Id. at 612, 614 S.E.2d at 637.  After executing the contract, the buyers conducted a title search and discovered a sewer easement on the property, so they refused to go forward with the closing and make the purchase.  Id.  The supreme court noted that a sewer line easement is not easily discoverable without research by an expert such as an attorney.  Id. at 615, 614 S.E.2d at 639.  Further, because of the speed of real estate transactions, it was not expected that a title search would have been conducted prior to the execution of a sales contract, and that a jury question was created regarding whether their reliance was reasonable as the explicit assurance might have induced the buyers to refrain from discovering the true facts regarding whether there were any easements prior to entering into a contract.  Id. at 615-16, 614 S.E.2d at 639-40.
Although we are sympathetic to the Kelleys plight, we find no error in the trial courts conclusions.  The Kelleys could have easily ascertained the lot they were purchasing by simply reading or having explained to them the contents of the deed, plat, and other documents presented for their signature, all of which identified Lot A and described the property in detail.  The Kelleys had the assistance of Mr. Kelleys parents, an interpreter, and an attorney in making their purchase.  Lot A, the hilly property the Kelleys actually purchased, was shown on a plat given to them as being located in a cul-de-sac, and it had a creek running across it.  The lot the Kelleys claim they wanted was level and was shown on the plat as being located next to Lot A.  It was not located on the cul-de-sac and did not have a creek running across it.    
There is nothing in the record indicating the Kelleys did not have the opportunity to view the lot, make a complete review of the public records, or request a detailed survey of the property before purchasing it.  See LoPresti v. Burry, 364 S.C. 271, 612 S.E.2d 730 (Ct. App. 2005) (noting one with knowledge of the truth or the means to acquire it by reasonable diligence cannot claim to have been misled).  
We have previously noted that  [t]he law imputes to a purchaser of real estate notice of the recitals contained in the written instruments forming his chain of title and charges him with the duty of making such reasonable inquiry and investigation as is suggested by the recitals and references contained therein.   Id. at 276, 612 S.E.2d at 732-33 (citations omitted) (emphasis in original); see also Thomas v. Jeffcoat, 230 S.C. 126, 94 S.E.2d 240 (1956) (holding there was no jury question presented regarding fraud where a buyer claimed he relied upon representations by the sellers agents that the property was high in front, but level, the court stating the buyer viewed the lot and if he failed to examine it as closely as he should have, it was a matter of his own volition); Reid v. Harbison Dev. Corp., 285 S.C. 557, 561, 330 S.E.2d 532, 535 (Ct. App. 1985) (stating the true test of the hearers right to rely on misrepresentations as to matters of record is whether or not he acted with reasonable prudence in so doing (quoting 37 C.J.S. Fraud § 34c (1943))).
In the current case, the plat, deed, and other documents presented to the Kelleys clearly identified the property for sale and they went forward with the closing even though three months elapsed between the execution of the sales contract and the closing.  We find this situation distinguishable from Slack, in which the buyers discovered the falsity of a representation by checking the public records and then refused to go forward with the closing.  The Slack court noted the timing of real estate transactions normally prevents a detailed records search prior to the execution of a sales contract.  Here, in contrast, the Kelleys had time to perform a detailed investigation of the property and relevant legal documents and did not make any attempt to invalidate the agreement until sometime after the closing.  Based on the foregoing, we find no error in the trial courts grant of summary judgment.
AFFIRMED.
HEARN, C.J., and GOOLSBY and ANDERSON, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  The Kelleys also sued The Home Place, but consented to a dismissal, without prejudice, of those claims.  
[3]  Mrs. Kelley can read and write and has a B.A. degree in deaf education.  Mr. Kelley can read, but not well, and he can write in American Sign Language; he has one year of college.  He reads blueprints and drawings for his job making cabinets for airplanes at a nearby airport.  He has previously obtained loans and purchased automobiles, and he handles his own bank accounts and writes checks.