694 S.E.2d 43

**Michael B. MOSELEY and Marsha H. Moseley, Respondents,**

v.

**ALL THINGS POSSIBLE, INC. and James H. Hampton, Appellants.**

**No. 4677.**

Court of Appeals of South Carolina.

Heard Nov. 4, 2009.

Decided April 22, 2010.

Rehearing Denied June 24, 2010.

Robert J. Thomas, of Columbia, for Appellants.

Barry L. Thompson and S. Jahue Moore, both of West Columbia, for Respondents.

LOCKEMY, J.

All Things Possible, Inc. and James H. Hampton appeal the circuit court's finding that they committed fraud in the inducement through the sale of a parcel of real estate. We affirm in part and reverse in part.

## FACTS/PROCEDURAL BACKGROUND

In August 2002, Michael and Marsha Moseley (the Moseleys) purchased Lot 45 in the Secret Cove subdivision in Lexington County. Lot 45 was an undeveloped lot owned by All Things Possible, Inc. of which James Hampton is the president. Lot 45 was encumbered by an underground, surface-water drainage easement running diagonally across the entire length of the property. Hampton was aware of the

drainage easement and intended to build a house on the corner of Lot 45 away from the easement. The easement is not recorded in a deed; however, it is recorded in a drawing on the recorded plat of the subdivision (subdivision drawing). According to the developer of Secret Cove, Lot 45 is unbuildable due to the location of the easement.

All Things Possible listed Lot 45 for sale through its real estate agent, Loretta Whitehead. The Moseleys contacted Whitehead, and she arranged for them to purchase Lot 45. During the course of their dealings, Whitehead received a faxed copy of the plat of Lot 45 that indicated Lot 45 was unencumbered (falsified plat). She was unsure who sent the fax to her office. Whitehead, who was unaware of the easement, provided the Moseleys with the faxed copy of the falsified plat. Further, she advised the Moseleys they would be able to build a home on the lot. James Jones, the Moseleys's attorney, contracted with Professional Title Services to prepare a title abstract. The Moseleys contend the title report did not contain the subdivision drawing. The Moseleys purchased Lot 45 for $37,500, unaware that the property was encumbered by the easement. In January 2005, the Moseleys learned of the easement through a real estate agent of a potential buyer.

In July 2005, the Moseleys filed suit against All Things Possible and Hampton alleging causes of action for breach of contract, fraud, and breach of contract accompanied by a fraudulent act. This action was tried without a jury on April 24, 2007, and the Moseleys proceeded solely on the fraud cause of action. The circuit court found Hampton provided a falsified plat to the Moseleys through his real estate agent and induced them to buy Lot 45. The circuit court determined Hampton had full knowledge of the falsity of his representation and intended for the Moseleys to act upon his misrepresentation. Furthermore, the circuit court concluded Hampton's misrepresentation was material, as the Moseleys would not have purchased Lot 45 had they known of the drainage easement. The circuit court found the Moseleys were unaware at the time of purchase that there was an easement and did everything reasonable to inspect and obtain information concerning the property. Additionally, the circuit court found the Moseleys had a right to rely on and were proximately

injured by Hampton's misrepresentation. Thus, the circuit court found Hampton committed fraud in the inducement.

The circuit court also found Hampton was the agent of All Things Possible and exercised complete control over the actions of the corporation. The circuit court determined Hampton's fraudulent concealment of the drainage easement and his sale of Lot 45 to the Moseleys was an action within the scope of his employment as president of All Things Possible. Consequently, the circuit court found All Things Possible vicariously liable for Hampton's fraud and determined that All Things Possible also engaged in fraud by concealment and fraud by misrepresentation. The circuit court awarded the Moseleys $44,275 in actual damages and $44,275 in punitive damages. All Things Possible and Hampton appealed.

## STANDARD OF REVIEW

An action for fraud is an action at law. *Hendricks v. Hicks,* 374 S.C. 616, 619, 649 S.E.2d 151, 152 (Ct.App.2007). "In an action at law tried without a jury, an appellate court's scope of review extends merely to the correction of errors of law." *Temple v. Tec–Fab, Inc.,* 381 S.C. 597, 599–600, 675 S.E.2d 414, 415 (2009). An appellate court will not disturb a circuit court's findings unless they are found to be without evidence that reasonably supports those findings. *Id.* at 600, 675 S.E.2d at 415.

## LAW/ANALYSIS

### I.  All Things Possible

All Things Possible and Hampton argue the circuit court erred in finding All Things Possible committed fraud by clear and convincing evidence. We disagree.

"Fraud is an intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to her or to surrender a legal right." *Regions Bank v. Schmauch,* 354 S.C. 648, 672, 582 S.E.2d 432, 444 (Ct.App.2003) (citing Black's Law Dictionary 660 (6th ed. 1990)). To prevail on a cause of action for fraud, a Plaintiff must prove by clear, cogent and convincing evidence the following elements:

(1) a representation; (2) its falsity; (3) its materiality; (4) either knowledge of its falsity or a reckless disregard of its truth or falsity; (5) intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Id.* at 672, 582 S.E.2d at 444–45. To establish a claim or defense of fraud in the inducement, a plaintiff must prove the nine elements of fraud as well as the following three elements: "(1) that the alleged fraudfeasor made a false representation relating to a present or preexisting fact; (2) that the alleged fraudfeasor intended to deceive him; and (3) that he had a right to rely on the representation made to him." *Darby v. Waterboggan of Myrtle Beach, Inc.*, 288 S.C. 579, 584, 344 S.E.2d 153, 155 (Ct.App.1986).

The circuit court found the Moseleys had a right to rely on Hampton's misrepresentations because he was the seller of real property, and his representations concerned the absence of a latent defect in the property. The circuit court determined that sellers have a duty to disclose latent defects to buyers and thus the Moseleys rightly relied to their detriment on Hampton's misrepresentation concerning the property. The circuit court noted that easements do "not generally come within the definition of a 'latent' defect because such should be discovered upon a 'reasonable' examination of the property by way of title search or survey." However, the circuit court found this case was distinguishable because the Moseleys were deterred by Hampton's behavior from requesting or demanding a survey prior to closing.

The circuit court noted that All Things Possible and Hampton rely on *LoPresti v. Burry*, 364 S.C. 271, 612 S.E.2d 730 (Ct.App.2005), to support their argument that the Moseleys had constructive notice of the easement. However, the circuit court also noted that *LoPresti* held constructive notice is "inapplicable especially 'where the very representations relied on induced the hearer to refrain [from] an examination of the records, where the employment of an expert would have been required to deduce the truth from an examination of the records, where confidential relations existed, or where the defrauded party was inexperienced.'" 364 S.C. at 277 n. 12,

612 S.E.2d at 733 n. 12 (quoting *Reid v. Harbison Dev. Corp.*, 285 S.C. 557, 561, 330 S.E.2d 532, 534–35 (Ct.App.1985)). The circuit court determined the Moseleys were induced to buy Lot 45 without conducting an independent survey of the property because "Hampton told them that they did not need to get another survey or plat as their lot was the last to be bought in the neighborhood," and "convinced them by drawing a home on the plat and offering to build it for them." The circuit court found All Things Possible vicariously liable for Hampton's fraud.

Relying on *LoPresti*, All Things Possible and Hampton argue the Moseleys had constructive notice of the easement. In *LoPresti*, this court held homeowners had constructive notice of a flood easement, notwithstanding the removal of a dotted line on a recorded plat showing the flood plain level, because the easement was properly recorded in the chain of title. 364 S.C. at 275, 612 S.E.2d at 732. Here, All Things Possible and Hampton contend the easement across Lot 45 was created by a plat which was approved by the Lexington County Planning Commission and recorded in the public record. The Moseleys argue they were not defrauded by documents recorded in the chain of title but were directly defrauded by All Things Possible and Hampton when they were given an altered plat by Whitehead. The Moseleys contend they justifiably relied on the plat when deciding to buy Lot 45. They argue they were unaware of the easement and did everything reasonable to safeguard their interests.

In *Slack v. James*, 364 S.C. 609, 615, 614 S.E.2d 636, 639 (2005), our supreme court determined a question of fact existed as to whether a buyer's reliance on a seller's misrepresentation was reasonable although the falsity of the misrepresentation could have been discovered through an examination of the public record. Here, although the misrepresentation made to the Moseleys could have been discovered through an examination of the public records, we find evidence in the record supports the circuit court's determination that the Moseleys did everything reasonable to inspect and obtain information concerning the property. The Moseleys hired an attorney, conducted a title search, and obtained a plat from Whitehead. The Moseleys were also induced to purchase Lot 45 without obtaining an independent survey of the property

after Whitehead, acting as an agent of All Things Possible, provided them with the falsified plat. While the circuit court determined Hampton was the seller of Lot 45 and that he personally provided the falsified plat to the Moseleys, Lot 45 was actually owned by All Things Possible. Additionally, the representations made concerning the property were made by Whitehead, not Hampton. Thus, we find there was evidence in the record to support the circuit court's determination that All Things Possible committed fraud, and we affirm the circuit court.

## II.   James H. Hampton

The Appellants also argue the circuit court erred in finding Hampton personally committed fraud by clear and convincing evidence. We agree. "An officer, director, or controlling person in a corporation is not, merely as a result of his or her status as such, personally liable for the torts of the corporation." *Rowe v. Hyatt*, 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996). "To incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act." *Id.* Here, there was no evidence Hampton personally committed fraud. Lot 45 was owned by All Things Possible, not Hampton. Whitehead, acting as an agent of All Things Possible, provided the Moseleys with the falsified plat. There was no evidence Hampton faxed the falsified plat to Whitehead. All representations made to the Moseleys concerning Lot 45 were made by Whitehead. Accordingly, we reverse the circuit court's determination that Hampton committed fraud.

## CONCLUSION

We affirm the circuit court's determination that All Things Possible committed fraud, and we reverse the circuit court's determination that James Hampton committed fraud. Accordingly, the circuit court's order is

**AFFIRMED IN PART AND REVERSED IN PART.**

WILLIAMS and PIEPER, J.J., concur.